### DOBYNS vs. McGOVERN, ET AL.

1. Executors who have given bond, with surety, for the faithful performance of their trust, are jointly liable, as principals, to indemnify the surety, who has been subjected for the default of one of them.

2. The liability of a surety, and his right to indemnity, must be determined by the laws in force at the date of his undertaking.

3. The representatives of a deceased administrator are responsible to the securities in the administration bond, for anything they may have had to pay, on account of the defalcations of a co-administrator, after his becoming the surviving administrator, and after he received by order of the county court from the executor of the deceased administrator, all the effects the latter had received.

4. A chose in action is assignable in equity, and the assignee may sue in his own name.

5. When a court of equity has cognizance of a subject, its authority over it is not lost, by reason of a concurrent jurisdiction being assumed by, or conferred upon another tribunal.

## ERROR to St. Louis Court of Common Pleas.

STATEMENT OF THE CASE.

This was a suit in chancery, and the material facts are as follows :

On the 29th of June, 1836, Philip McGovern and Hugh O'Neil were appointed administrators of the estate of Mary Reilly, and jointly executed an administration bond, as principals, with John Finney, John Shade and the complainant Dobyns as security, conditioned in the usual form, that said McGovern and O'Neil as such administrators, should faithfully administer said estate, account for, pay and deliver all money and property of said estate, and perform all other things touching said administration required by law, on the order of any court having jurisdiction·

On the same day, June 29th, 1836, said McGovern and O'Neil were also appointed joint administrators of the estate of Michael Reilly, and jointly executed an administration bond

as principals, with Hugh O'Brien, John Shade and the said complainant, Dobyns, as securities, and bond the same as the last mentioned bond.

McGovern and O'Neil entered upon their duties, and effects belonging to each of said estates to a considerable amount, came into their hands to be administered. McGovern died before the administration was closed on either estate, and his executor, under the order and direction of the county court, settled with O'Neil as surviving administrator of the above mentioned two estates of Mary and Michael Reilly, and under the order and direction of said court, paid and delivered over to said O'Neil, as such security administrator, all the money and effects that had come into the hands of McGovern during his life time.

No part of the effects of said estates of Michael and Mary Reilly was squandered or misapplied by McGovern or his executor, nor by O'Neil, prior to his said settlement with the executor of O'Neil, but after his said settlement and after the payment and delivery to O'Neil as aforesaid, of all the effects that had ever come to the hands of McGovern, O'Neil squandered the effects of said estate to a large amount and then died.

After the death of O'Neil a new administrator of the estates of Michael and Mary Reilly was appointed, who duly presented and had allowed against the estate of said O'Neil a claim or demand for the amount so squandered by O'Neil, and the same was duly allowed against the estate of said O'Neil, but said estate being insolvent nothing was ever received on said claim.

The said new administration of Michael and Mary Reilly thereupon brought suits against the securities, upon the above mentioned administration bonds, and recovered judgment against them on account of the aforesaid defalcations of said O'Neil, which judgments were paid to the sheriff ; one half by the complainant, Dobyns, and the other half by the said John Finney. The other security, John Shade, paid Dobyns and Finney $1,000 of said payments, in consideration of which Dobyns and Finney agreed to protect Shade against further contribution or payments.

This suit was brought to recover of the representatives of McGovern the money so paid by the complainant, Dobyns. The executor and administrator of said McGovern was not a party to this suit, but the defendants are charged as the distributees of said estate, and the reason for proceeding against them is alleged to be, that before Dobyns paid the money, the administrator of the estate of McGovern had been finally settled and the executor discharged, and the estate distributed among the defendants, as devisees of McGovern.

It is claimed, that as McGovern is named as a principal with O'Neil, in the aforesaid administration bonds, his estate is responsible to the securities in those bonds, for anything they may have had to pay on account of the defalcations of O'Neil, after his becoming the surviving administrator, and after he received, by order of the county court, from the executor of McGovern, all the effects that the latter had ever received.

The defendants contended, that the representatives of McGovern ought not to be held responsible for the defalcations of O'Neil after McGovern's death, and after, by law, his executor could have no control over the estates of Michael and Mary Reilly, and after he had as by law in such cases he was bound to do, and under leave of the proper court, delivered over to O'Neil all the effects that had ever come to the hands of O'Neil.

The court below held the representatives of McGovern responsible, and decided accordingly.

It was referred to a commissioner, to ascertain the amount that had been paid by Dobyns, the complainant, under the aforesaid judgments against him, Finney and Shade. The commissioner refused to allow in favor of the defendants anything, on account of the aforesaid payment by Shade to the complainant and said Finney, but reported in favor of complainant the full amount that had been paid by him to the Sheriff. The defendants duly excepted to the refusal because there was no deduction made on account of said payment by Shade, and claimed that the whole ——— half thereof, should have been deducted.

The court overruled the exceptions to the refusal, to which the defendants duly excepted.

A final decree was rendered against the defendants for the full amount reported by the commissioner, to which the defendants duly excepted.

A motion to set aside the decree, and for a re-hearing was duly made, and overruled, to which the defendants duly excepted.

### H. S. Geyer & B. B. Dayton, for plaintiff in error.

I. By the death of McGovern, and the payment and delivery by his executor to O'Neil, the surviving administrator of the estates of Michael and Mary Reilly, under the judgment of the county court, of all the money and effects in the hands of McGovern when he died, the responsibility of the latter and his representatives in respect to the administration of said estates, and to any subsequent breach of said administration bonds ceased.

In support of this proposition we must refer to some parts of the Revised Code of 1835, in force when the administration in question was granted and the said bonds executed.

By the 32 section of Article 1st, of the Administration act page 44, Code of 1835, it is provided, that if there be more than one administrator of an estate. and the letters of a part of them be revoked or surrendered, or a part die, those that remain shall discharge all the duties required by law respecting the estate.

By section 34, same Article and page, if any administrator die, resign or his letters be revoked, he or his legal representatives shall account for, pay and deliver to his successor, or to the surviving or remaining administrator, all moneys, real and personal property of every kind, and all rights, credits, deeds evidences of debt, and papers of every kind of the dec'd, at such time and in such manner, as the court shall order upon final settlement.

Sec. 35 of same Art., page 45, provides, that the succeeding or remaining administrator may proceed at law against the delinquent and his securities.

It appears then, that by the law of the land, upon the death of McGovern, his representatives cou'd have nothing to do with the subsequent administration of the estates of Michael and Mary Reilly, but must, of necessity, deliver up to O'Neil as surviving administrator, all the effects belonging to said estates, in the hands of McGovern when he died, and O'Neil would thenceforward have sole control and management of the estates. This course could have been resisted by the representatives of McGovern, and it appears that his executor did in obedience to this law of the judgment of the court, deliver over said effects to O'Neil — Up to this time there was no default, or misconduct on the part of either administrator.

Upon what principle of law or justice is McGovern's estate to be held responsible for the subsequent defalcation of O'Neil?

When the law took away all control by McGovern's representatives, over the estates of the Reillys, and took out of his hands all the effects of said estates, it ought to, and we contend that it does thereby operate a release of responsibility for after events.

Can it reasonably be contended that McGovern's undertaking on the bond, was to be responsible for the acts of O'Neil, after he (McGovern) should cease to be administrator? The terms and object of this bond require no such effect to be given to i·, either for the benefit of O'Neil or the securities.

Being a co-administrator, he must, we suppose, necessarily have been a principal in the bonds: sec. 13, Art. 1, Administration act of 1835, p. 42.

But did he, under the law, become responsible as O'Neil's security, or as a principal in the bond, for acts done by O'Neil after they ceased to jointly exercise control over the estates, and after the law had placed the effects and the control of the estates entirely in the hands of O Neil.

The bonds were executed by him with no such view, nor do we deem that a fair and reasonable construction of them. He executed them to become a co-administrator and to hold himself responsible in his character as such, and not to be converted into a security for O'Neil, after he should cease to act.

Dobyns vs. McGovern, et al.

The bond, in each case, was made and should be construed with reference to the law of the land bearing upon the matter to which it relates. Looking to those laws, in all their bearings upon this matter, and it cannot reasonably be contended that McGovern was to be either the security for O'Neil or that he was to be considered one of the principals of the securities, after he ceased to have control over the estates.

The terms of the bonds may make the securities responsible, after the death of McGovern and if so responsible, it will be by holding that they undertook by the bond to become the securities of each of the administrations.

We contend, that upon the death of McGovern, the securities in the bonds were either discharged entirely from responsibility for the future, or they continued to be only the securities of O'Neil, and whatever they have had to pay being on account of the subsequent misconduct of of O'Neil, they have paid as his securities and not as the securities of McGovern.

It may well be questioned, whether they were not, upon the death of McGovern, discharged entirely from responsibility for future misconduct, because, by that death under the laws of Missouri, the character of the administration was changed materially, and ceased to be that which they guaranteed should be faithfully performed. The condition of the bond was, in terms, that they (McGovern and O'Neil) should faithfully administer, &c., and they did faithfully administer, so long as they both acted. When by operation of fact and law, the administration ceased to be under the control which the securities had become responsible for, and went under a materially different control, less safe to them, did they still continue responsible for it? If they did, they were but securities for O'Neil, and not for McGovern or his representatives; and further, if by law they still remained securities for O'Neil, they could have protected themselves against his insolvency and misconduct, by the means pointed out in our statute. They could thus have obtained an additional bond which would have relieved them from subsequent responsibility, or, in default of such bond, the letters of O'Neil would be deemed revoked, and his power to squander the estate taken away: Session laws of 1840-41 page 3, sec. 1; Revised Code 1845, sec. 26, page 44.

II. The payment made by the co-security, Shade, to Dobyns and Finney, should have been, or, at least, one half the amount thereof should have been deducted by the commissioner in arriving at the amounts which the plaintiff had actually paid and was damaged by reason of the securityship.

The administrator of Mary and Michael Reilly, who succeeded O'Neil and recovered judgment against all three of the securities on account of O'Neil's defalcation, for $3,779 84. Shade, one of the securities, paid to the other two, Dobyns and Finney, $1000, and they assumed to pay and did pay the judgments. Shade, it is true, assigned to Dobyns and Finney his claim against the representatives of McGovern, but that did not enable Dobyns and Finney to sue and recover in their own names their or his portion. They owned the beneficial interest in the claim of Shade, but could sue upon such interest only in his name. The complainant, in this case, might as well have undertaken to recover the amount paid by Finney as that paid by Shade.

"Joint securities paying the money for their principal, should yet sue him severally for the money paid:" Gould vs. Gould, 8 Cowen 168.

Such claims are not assignable so that the assignee can maintain a suit in his own name.

A surety paying money for his principal, is entitled to be indemnified with, he cannot speculate out of his principal. As between him and his principal, he cannot make any contract including the amount he has to pay, without its operating in favor of his principal. At most, the arrangement amounted to a purchase of the claim of Shade, against the representations of McGovern. That can only be recovered by a suit in the name of Shade: See McMehan vs. ——— 2 Randvessh 514.

## R. M. FIELD, for defendant in error.

I. The proceeding against Philip McGovern's distributees, under the circumstances, liability stated in the bill, were proper: Miller vs. Woodward, 8 Mo. Reports 169.

II. Philip McGovern as joint principal in the bond was holden to indemnify the sureties, for they were his sureties.

In Babcock vs. Hubbard, 2 Conn. Rep. 5 36, it was decided that executors who have given joint bond are jointly liable to indemnify the sureties without reference to who committed the devastavit; and even where the devastavit was committed after the death of one, his estate is liable.

So, in Hall vs. Blanchard, 4 Dissouis Rep. 21, it was holden, that the surety in an administration bond cannot be made liable for the administrator's default, at the suit of a co-administrator who was also principal in the bond, though claiming in another right.

So, in Boyd vs. Boyd, 1 Watts' Rep. 365, it was decided, that on joint administration, the administrators are jointly liable for each other as principals, and that the sureties are bound for both without reference to who is or is not the acting administrator.

So, in Clark vs. Williams, 6 Gill & J. 288, the administrator of a co-administrator was held liable for the devastavit of the survivor.

So, in Hughlett vs. Hughlett, 5 Humph. Rep. 453, joint executors, executing a joint bond with sureties, are declared to be responsible to creditors and distributees for the defaults of each before the sureties.

The mistake of the plaintiff in error is conceived to consist in not distinguishing between the responsibility of Philip McGovern a co-administrator and as co-principal in the bond.

It is admitted, that as co-administrator, he is not liable for the default of O'Neil, in which he did not participate, but it is insisted, that as co-principal in the bond, he must indemnify the common sureties.

Upon the contrary construction, it is manifest, that the contract of the sureties has become entirely different, without any agency of theirs, from what it was when entered into. And we have the anomalous state of things, that the surety is bound while the principal is discharged.

SCOTT, J., delivered the opinion of the court.

The case of Owen's Executor vs. Aaron Overton, executor, &c., decided at the January term of this court for the present year, recognized the principle of Babcock vs. Hubbard, 2 Conn. 536, that executors, who have given bond with surety for the faithful performance of their trust, are jointly liable, as principals, to indemnify the surety who has been subjected for the default of one of them. Though the liability of each of the executors, as parties to the bond may as between themselves, resemble that of a surety, for his principals, yet, as regards the surety, who to every intent is merely such, they must clearly be considered as joint principals and bound to indemnify him for money that he has paid for any of them. This doctrine is not denied by the plaintiffs in error, but it is contended, that our statute on the subject of administrators and executors has altered this principle or, at least, rendered it inapplicable to the present case. The bonds in which the defendant in error was bound as surety for Hugh O'Neil and Philip McGovern, were dated on the 2d day of June, 1836. The liabilities of the surety and his right to indemnity, must be determined by the law in force at the date of his undertaking. By the 32d section of the 1st article of the administration law of 1835 it is provided, that if there ... re then one executor

or administrator and a part die, those who remain shall discharge all the duties required by law respecting the estate. By the 34 section of the same article it is enacted, that if any administrator die, his legal representatives shall account for, pay and deliver to the remaining administrator, all money, property, &c. belonging to the estate. The 35 section of the same article makes it the duty of the remaining executor to proceed against the delinquent and his sureties.

It is contended, for the plaintiff in error, that no devastavit having been committed by McGovern before his death, and his representatives being compelled to deliver up the estate to the sole management of O'Neil, it is unjust to make McGovern's heirs responsible for the acts of O'Neil after McGovern had ceased to have any thing to do with the estates of the Reillys. If this were a controversy between O'Neil and McGovern, this argument would certainly have great force. But the contest is between McGovern and his surety. McGovern is presumed to have known the nature of the obligation he incurred, by joining as principal in the bond with O'Neil. He knew that the state of things that now exists, might have occurred, and that on the event of his death, the sole administration would devolve on O'Neil. It is no argument, that the law did not allow administrators to give separate bonds, McGovern was not compelled to become joint administrator. Because he could not enter into a separate bond, that cannot change the nature of the joint obligation to which he voluntarily became a party. The fact that McGovern was a joint administrator, may have induced Dobyns to become surety. We all know, that a man would sign a joint administration bond as surety, when there is a particular name to it, which he never would have signed had that name been omitted. He might have relied on the integrity of a name and the ability of its bearer to indemnify him, while he had no confidence whatever in the joint administrator. On the death of one of two joint administrators, the sole administration devolves on the surviving administrator, and, of course, the law contemplated that the obligation of the bond covered that state of things.

It does not appear, that under the 26th section of the 1st article of the administration law, the surety could have released himself, as a knowledge of none of the facts set forth in the section is traced to him, nor are they shown to have existed prior to the devastavit. Nor is it shown that the defalcation of O'Neil occurred subsequently to the passage of the act of 11th of January, 1841, which took effect only a short time prior to his death. We will not determine, whether the mere omission of the surety to apply for a discharge, not being required to

do so, and no knowledge of any fact which should prompt him to such a step appearing, would bar his recourse for indemnity against his principal.

We see no objection to the recovery of the money paid on account of Shade. He was liable for one third of the judgment against McGovern's sureties and paid a thousand dollars to his co-sureties who, in consideration thereof, released him from his liability and took an assignment of his claim for indemnity against McGovern's estate. A chose in action is assignable in equity and the assignee may sue in his own name: 2 Story's Equity, sec. 1047, 1057. It is a principle of chancery jurisprudence, that when a court of equity has cognizances of a subject, its authority over 't is not lost by reason of a concurrent jurisdiction being assumed by or conferred upon another tribunal. So the ancient jurisdiction of the courts of chancery in relation to this matter is not taken away, because courts of law now permit an assignee to use the name of the assignor to recover a debt which may be assigned. Judge Ryland concurring, the judgment will be confirmed. Judge Gamble not sitting.