Dickman, J.
The plaintiff in error does not deny his liability as surety on the administration bond, but contends that the administrators are also liable as principal debtors. If the co-administrators, as between themselves and' the surety, are bound as principals, it is the statutory right of the surety, that the property, both personal and real, of the principal debtors, within the jurisdiction of the court, shall be exhausted before any of his property shall be taken in execution.
As appears by the special finding of facts, no waste of assets occurred during the life time of the administrator Samuel Engle ; and it is therefore claimed that his estate cannot be held liable upon the bond in suit jointly with Henry Engle, for a devastavit by Henry Engle after his, Samuel Engle’s, death. It is understood that at the common law, one executor is not chargeable for a devastavit of his co-executor, and is chargeable only for the assets which have come to his own hands; and the better opinion would seem also to be, that administrators stand on the same ground in these respects, as to their powers and responsibilities. And yet, even according to the common law, where there has been a joint possession or custody of any part of the estate, and one executor having power and opportunity to make it secure, has yielded the control to the other, they will thereby be rendered jointly responsible.
But by uniting in a joint statutory bond, one administrator may incur a liability for mismanagement and waste by his co-administrator, to which, at the common law, he would not be subjected. Henry Engle and Samuel Engle executed the joint and several administration bond, with Francis Eckert their surety, of which one of the conditions is, that the ad *531 ministrator shall administer according to law, all the moneys, goods, chattels, rights and credits, and proceeds of real estate, which shall at any time come'to the possession of the administrators, or to the possession of another person for them. At and before the death of Samuel Engle, all the property and estate of Daniel Engle, deceased, had come into the joint possession of his two administrators, and being under their joint control, the duty was incumbent upon each and both of them, to see that all assets in their hands were properly administered for the benefit of creditors and distributees. That duty, so far as Samuel Engle was concerned, having devolved upon him as a joint obligor, it was not released or discharged by reason of his death; and his death was no bar to an action against his personal representative jointly with the surviving administrator. Revised Statutes, section 6102; Burgoyne v. Ohio Life Ins. & Trust Co., 5 Ohio St. 586.
While these views are not entirely in accord with the decisions in Massachusetts, the court in Ames v. Armstrong, 106 Mass. 18, where the executors had given a joint bond, say : “ They gave a bond according to the requirements of the statute, and we find it impossible to avoid considering that bond as binding equally on both, and making each of them liable for its entire fulfillment, at least as to all assets included in their inventory and which have come, into their joint possession. * * * * Having united in a joint bond, its effect is to make them both liable to the judge of probate as the trustee for creditors and others interested in the estate, to the extent of the assets which have come to their joint possession.”
In Jamison v. Lillard, 12 Lea (Tenn.), 690, the bond was joint, and legal assets came to the hands of Lillard as co-executor, who became insolvent without having accounted for a considerable portion of them ; and although none of the assets ever came actually into the hands of Blackman, who died some two or three months after his qualification as executor, yet it not being shown when they actually came into the hands of Lillard, the active executor, the presumption was, that they did come to the hands of Lillard before Blackman’s death. It was accordingly held, that having given a joint *532 bond, they were mutually liable on the bond, to creditors and distributees, for each other’s acts as executors, prior to the liability of the sureties. Section 5999 of the Revised Statutes provides, that when two or more persons are appointed administrators, the court may take a separate bond, with sureties, from each of them, or a joint bond, with sureties, from all of them. A wise precaution might dictate a separate bond, where one of the administrators is unwilling to become bound as a principal for the acts of the other. But the fact that Samuel Engle entered into the joint obligation would indicate, that it was his intention to charge himself as principal according to the terms of such a bond.
The plaintiff in error, by his written contract — the administration bond — expressly bound himself as surety for Henry Engle and Samuel Engle, as principals. As held by the supreme court of the United States, in Miller v. Stewart, 9 Wheat. 702, the liability of a surety is not to be extended by implication beyond the terms of his contract; his undertaking is to receive a strict interpretation, and not to extend beyond the fair scope of its terms; and the whole series of authorities proceeds on this ground. The obligation assumed by the plaintiff in error was that of a surety for two persons, and a different and increased obligation is not to be imposed upon him, contrary to the plain words of the bond, by reducing the number of principals whose property should be first applied before having recourse to his property, or from whom he might seek indemnity, when subjected to loss on account of the misconduct of cither of them.
Henry Engle and Samuel Engle having given a joint bond as principals, for the faithful performance of their trust, the survivor and the representative of Samuel Engle would be jointly liable to indemnify the surety, if he had been subjected for the default of Henry Engle; and if so, the property of the principals should bo first exhausted in payment of the claim of the creditor Landrock, before resorting to that of the surety. In an early and leading case, Babcock v. Hubbard, 2 Conn. 536, it was held, that executors, who had given bond with surety to the judge of probate, for the faithful performance of *533 their trust, were jointly liable as principals to indemnify the surety who had been subjected for the default of one of them; that they were co-obligors, and that the plaintiff was surety for them all and not co-surety, and had an action against them jointly for indemnity. This case was followed and approved in Dobyns v. McGovern, 15 Mo. 662, where the principle was extended, and it was decided that the representatives of a deceased administrator are responsible to the securities in the administration bond, for anything they may have had to pay on account of the defalcations of a co-administrator, after he became the surviving administrator, and after he received, by order of the court, from the executor of the deceased administrator all the effects the latter had received. In the same line of decision is, Boyd v. Boyd, 1 Watts. 365, in which Bobcock v. Hubbard, supra, is cited, and its doctrine commented upon approvingly. And in Stephens v. Taylor, 62 Ala. 269, it was held that two or more executors or administrators, entering into ajoint bond for the faithful j>erformance of their duties, are hable for the acts and defaults of each other, unless the bond itself shows that they did not intend to become so bound; and they, and each of them, come under the obligation to hold their sureties harmless against any loss by default on the part of either of the principals; and though one or more of the executors dies, the bond remains a security for the performance of duty by the other, unless proper steps are taken to have the. bond made inoperative for future defaults. “ These,” says Manning, J., “ are the duties towards one another, that spring out of the relations created by the bond. The instrument does not become void and inoperative by the death of any one of the parties. Should one of the executors die, of course he becomes unable to perform any acts of administration. But the bond remains in force as a security for the proper performance, by the other, of his duties in respect to the estate.”
When administrators enter into a joint bond, for the faithful administration of assets that may come into their possession, creditors and distributees, in an action against the surety for a breach of the conditions of the bond, will not be required to establish an actual breach by both principals before they *534 can recover. Under the joint obligation, the default of one is the default of both. If property has come into the joint possession of two administrators, who have entered into a joint bond, with surety, they may make an arrangement between themselves, by which one of them shall be the acting administrator, and the next day, upon the death of the. other, the survivor may squander all the property in his hands. In such case, the surety may be compelled to make up the loss to the creditors, but upon doing so, it could not be justly claimed, that he would not be entitled to indemnity from the surviving principal and the representative of the deceased principal.
It has been suggested that Henry Engle and Samuel Engle, by executing the joint bond, became merely sureties for each other, as to their respective transactions. But Samuel Engle did not become a co-surety with Francis Eckert, and thereby bound only to contribute a portion of the amount which Eckert, as surety, might be compelled to pay, instead of being liable as principal to re-imburse the whole. As between themselves and Eckert, the two co-administrators were joint principals. It would seem, however, that as between themselves, the co-administrators might each be a principal for the performance of the condition of the joint bond, so far as relates to himself, and a surety for his co-obligor that he would duly perform the conditions to be by him performed; and that, to the extent of his suretyship for his associate, one co-administrator might recover indemnity from the other, as any other surety might from his principal.
In accordance with the aforegoing considerations, our conclusion is, that the judgment of the district court should be reversed, and that of the court of common pleas affirmed.

Judgment accordingly.