LANCASTER, adm'r, *v.* LEWIS, LEONARD & Co. *et al.*

</div>

1. Where a large number of suits have been brought against the administrator of an insolvent estate, to all of which he has the common defence of *plene administravit præter*, and an application for a homestead in the lands of the intestate is pending, and there are other complications in the administration of the estate which do not affirmatively appear to have been brought about by the fault of the administrator, notwithstanding the fact that some years have elapsed since the grant of administration, a petition to consolidate all the suits and try them together, and also to marshal the assets and decree a proper distribution of the same according to the legal priorities existing among the various creditors, has equity in it and should not be dismissed on general demurrer.
2. Where two administrators execute a common bond as such, each is surety for the other, and where one of them dies, this suretyship continues in force as to subsequent acts of the survivor. ·
   April 30, 1894. Argued at the last term.

Equitable petition. Before Judge FISH. Pulaski superior court. May term, 1893.

The petition of J. M. Williams as administrator of J. C. McCormick, alleged that he was so appointed in February, 1887. The estate was appraised, including both solvent and insolvent choses in action, at $6,985.42, and a large amount has been paid out in payment of just debts of deceased, and in paying necessary expenses of administration, as will appear by reference to returns and vouchers attached. J. C. McCormick and L. B. Wilcox were joint administrators on the estate of M. D. Wilcox. McCormick died in November, 1886, leaving L. B. Wilcox sole surviving administrator of M. D.

Wilcox. L. B. Wilcox was then perfectly solvent. The assets of M. D. Wilcox's estate had been converted into money, and L. B. Wilcox had in his possession $3,470.99 thereof. When McCormick died both he and L. B. Wilcox were each fully able to respond for any just claims against them, for all amounts due the creditors of M. D. Wilcox. If there has been any mismanagement or *devastavit* of the estate. of M. D. Wilcox, it was after the death of McCormick and by L. B. Wilcox, for which McCormick's estate is not responsible. McCormick was always ready and willing to account for and pay over all the assets of M. D. Wilcox in his possession or power, to those entitled, and since McCormick's death petitioner as his administrator has always been. Said amount is $1,551.76, with interest from June 1, 1886, and this amount petitioner is willing to pay over and be discharged from further liability. To avoid a multiplicity of suits and unnecessary expense, it is needful that the matters embraced in the suits hereafter named shall be determined in this petition. All said suits involved the same legal propositions and the same defences. All the matters pertaining to the estate of M. D. Wilcox were refered to an auditor, who made his report to Pulaski superior court, April 3, 1886, and according to the report there was found in the hands of the administrators $5,022.75. The report was made the judgment of the court, and decree rendered thereon against L. B. Wilcox, surviving administrator, at the November term, 1889, but no judgment or decree thereon has ever been made against the estate of McCormick, nor against petitioner as his administrator. There are now pending in the superior court various suits upon the administration bond given by McCormick and L. B. Wilcox as administrators (describing them). Under said decree L. B. Wilcox claims $349.70, Lewis, Leonard & Company claim $140.55, C. P. Brown claims, upon a

judgment rendered in Houston superior court (the validity of which petitioner denies), $127.65 with interest, and petitioner owes attorney's fees for the management of said estate. Mary E. Williams, as next friend and mother of Rebecca McCormick and others, has applied for homestead and exemption out of the estate of J. C. McCormick, which is now pending in the court of ordinary of Pulaski county. These claims are largely in excess of the whole of the assets of McCormick's estate. Petitioner prays that he be allowed to marshal the assets of said estate; that the several equities of the various claimants thereto be inquired into and determined, as also the rights of said estate, and proper direction be given him as to the distribution thereof, to save himself and securities harmless and insure a proper distribution of the estate; that all of said parties interplead and have their respective rights adjusted under this petition; that all said common law suits, as well as the application for homestead, said *fi. fas.* and claims, be enjoined from proceeding until further order and decree; that if any necessary parties have been left out, upon ascertaining them they may be made parties hereto; that the auditor's report and decree referred to may be considered part of this petition; and for general relief. Lewis, Leonard & Company hold against the estate of McCormick a *fi. fa.* for $466.82 with interest, and another for $87.10 with interest, claimed to be a prior lien upon the assets of said estate, but may not be if the homestead is granted and said suits sustained. These *fi. fas.* were obtained against McDuffie and McCormick during the life of McCormick, and McDuffie is insolvent. Among said complications and conflicting claims petitioner does not know how to pay out the assets of the estate with safety to himself and sureties. All the claims due the estate have not been collected nor all the real estate sold, and he does not know the amount that will be re-

alized out of the estate for distribution. He attaches exemplification from the court of ordinary, the application for homestead, and asks leave to attach other exhibits should they become necessary.

The case proceeded in the name of Lancaster as administrator *de bonis non*, as plaintiff. Defendants demurred on the grounds: (1) No equity. (2) Adequate common law remedy. (3) Assets not in condition to be marshalled. (4) No allegation that petitioner has collected the debts or sold the property of the estate, and no reason given for not doing so. The demurrer was sustained, and the plaintiff excepted.

A. C. PATE and L. C. RYAN, for plaintiff. J. H. MARTIN, JACOB WATSON and W. L. GRICE, for defendants.

SIMMONS, Justice.

1. The administrator of McCormick filed his equitable petition against Lewis, Leonard & Co. *et al.*, for direction, to marshal assets, etc. The facts, so far as material, will be found in the official report. It appears that the estate was insolvent, and that a large number of suits had been brought against the administrator, to all of which he had a common defence of *plene administravit præter*. There was also an application for a homestead in the land of the intestate, and there were other complications which it is unnecessary to mention here. These complications do not appear to have been brought about by any fault on the part of the administrator, although several years had elapsed since he was appointed. He petitioned by the present suit that all the pending suits against him might be consolidated and tried together, and that the assets be marshalled and a proper distribution of the same decreed according to the legal priorities existing among the various creditors. In our opinion, the court erred in dismissing the petition for want of equity. The facts recited show a sufficient

equity to have authorized the court to retain the petition and grant the relief prayed for therein.

2. McCormick and L. B. Wilcox were joint administrators on the estate of M. D. Wilcox. McCormick died leaving L. B. Wilcox surviving administrator. The petition alleges that when McCormick died L. B. Wilcox was perfectly solvent, that the assets of M. D. Wicox's estate had been converted into money, and L. B. Wilcox had in his possession $3,470.99 thereof, and that if there had been any mismanagement or *devastavit* of the estate of M. D. Wilcox, it was after the death of McCormick, and McCormick's estate was not responsible therefor. Where two administrators unite in giving a joint bond for the proper administration of the estate, each is surety for the other (Code, §2510), and where one of them dies, this suretyship continues in force as to subsequent acts of the survivor. We are aware that some courts have held that where one administrator dies, his estate is not responsible after his death for the acts of a coadministrator; but we think the better opinion is, that the bond remains as a subsisting security for the performance of duty by the other, unless proper steps are taken to have it made inoperative as to future defaults. To this effect see 7 Am. & Eng. Enc. of Law, pp. 216, 217; Schouler on Executors, §145, and cases cited; Stephens *v.* Taylor, 62 Ala. 269; Dobyns *v.* McGovern, 15 Mo. 662.

*Judgment reversed.*