Norton, *et al.*, *v.* Miller, *et al.*    [December

---

## NORTON, *et al.*, *v.* MILLER, *et al.*

It is irregular and erroneous for the probate court of one county to appoint a guardian for minors who reside with their property in another county.

Both the principal and sureties in a bond are estopped from denying the truth of its recitals—as where the recital is, that the principal was appointed guardian, &c., they will not be permitted to deny the jurisdiction of the court making the appointment.

Where a guardian voluntarily submits the settlement of his guardianship in a probate court other than that appointing him, he and his sureties are estopped to deny the jurisdiction of the court, however irregular its pro-ceedings may have been.

Where a guardian settles his accounts in the probate court, the settlement is conclusive as well upon his sureties and wards as himself, except for fraud, and can not be inquired into collaterally.

A guardian should not be permitted to resign his guardianship and be dis-charged until he makes full settlement.

N. was appointed guardian of several minor heirs, and executed bonds as such, with different sureties in each bond, to whom N. mortgaged property to indemnify them. A large amount of property belonging to the wards came into the hands of the guardian. He was removed from the guardianship without making final settlement, and a successor appointed. No order was made by the probate court that he pay over to his successor. The heirs united in a bill in chancery against the sureties. *Held,* that no equitable jurisdiction was shown to exist upon which a decree could be rendered against the guardian, nor against the sureties. That there was no legal liability on the guardian to pay to his successor until an order on him by the probate court, and, until he made default, no liability to pay rested on his sureties. That the heirs could not jointly sue, nor the sureties in the several bonds be jointly sued, nor be held to account beyond their liability on their several bonds. That the remedy of the heirs, being now of age, was severally on each bond by suits at law.

*Appeal from Sebastian Circuit Court in Chancery.*

Hon. E. J. SEARLE, Circuit Judge.

CLARK, WILLIAMS & MARTIN and VANDEVER, for appellants.

DUVAL & KING, for appellees.

WALKER, C. J.

The complainants (children and heirs at law of Joseph Miller, deceased) filed their bill in chancery against William H. Norton, their guardian, and his sureties, upon eight several guardian bonds, for an account and payment of the money and estate which they allege came to the hands of their guardian, and is due to them as such heirs.

We will proceed to consider the several questions presented, somewhat in the order they arise upon this voluminous record, referring, as we progress, to such parts of it as may be necessary to a proper understanding of the particular questions discussed.

It is first contended, by the appellants, that the probate court of Crawford county, in which letters of guardianship were

granted to Norton, had no jurisdiction of the case because the heirs of Joseph Miller resided in Sebastian county, and had no property in Crawford county at the time Norton was appointed guardian, and entered into bond; and therefore, the appointment of Norton was irregular, and the bonds entered into were, at most, valid only as common law bonds.

Joseph Miller died in 1848, being at the time of his death a resident of Crawford county, where letters of administration were granted upon his estate by the probate court of that county. Subsequently—after Crawford county had, by act of the Legislature, been divided, and the new county of Sebastian, including the residence of the heirs of Miller, was established, but before it was organized—the probate court of Crawford county, which had previously granted letters of administration upon Miller's estate, appointed Norton guardian of Miller's children—the complainants.

The question thus presented is, was this appointment regular, and if not, is Norton and his sureties bound upon their bond to account for the estate received under such appointment?

It seems that the act which established the county of Sebastian was approved and in force only four days before the appointment of Norton as guardian, by the probate court of Crawford county, and it is highly probable that the court was not aware of the passage of the act; but, however this may be, in point of fact, the law was none the less controlling, and it was irregular and erroneous to have made an appointment of a guardian over minors, who, with their property, were residents of another county.

But, from the view which we take of the case, the question as to the regularity of the proceeding before the Crawford probate court making the appointment, is not properly before us. Norton and his sureties are estopped by their bond from raising this objection; because, in the condition of the bond, they, in express terms, say, that "on the 9th day of January, 1851, Norton was appointed, by the probate court of Crawford county, guardian," &c. And so absolute and conclusive upon them is

this admission, that, no matter how untrue in point of fact, they can not question it.   *Greenleaf* says: " It makes no difference in the operation of this rule, whether the thing admitted was *true* or *false :* it being the fact that it was acted upon that renders it conclusive." *1 Greenl. Ev., page 208.*   In the case of *The People v. Norton, 5 Selden's Rep., p. 179,* in which a question arose as to the liability of a trustee upon his bond, the court say: "Lynch got possession of the trust estate under · the proceeding by color of which he claimed to be trustee, and Norton voluntarily undertook, as his surety, that he would faithfully administer the trust.   If the proceeding was irregular, for want of notice to the children of Mrs. Lynch, they might object to it in a proper manner, for that cause; but Lynch, after having obtained the property upon the pretense of being the trustee, can not be permitted to deny his liability to account as such.   The defendant, who voluntarily became his surety in order that he might take the trust property, is, for a like reason, precluded from denying his liability as such." The case of *Iredell v. Barber, 9 Iredell's Rep., 234,* is strongly in point.   King had been appointed guardian for Mrs. Fane, a lunatic, and entered into bond with surety for the faithful performance of his duties, and, in the condition of his bond, recited his appointment as guardian by the court—a court, however, that had no power to make the appointment, and this want of jurisdiction to appoint was relied upon by King and his sureties in bar of a right of recovery upon the bond.   In considering which, PEARSON, judge, said: " It is true the court had no power to appoint King the guardian of Mrs. Fane, and authorize him to take her estate into possession, but the defendant will not be heard to make this objection; he concurred in the act, his bond solemnly asserts that   *    *    *  ., and after he has taken the estate into his possession, and wasted it, it is not for him to say that it was unlawful, and therefore he is not bound by his undertaking deliberately entered into."

In the case of the *United States v. Manin, et al., 2 Brock. Rep., 115,* Chief Justice MARSHALL said: " The appointment

of Manin is illegal, but that does not render the bond void. It was given in the confidence that James Manin was legally appointed to office."

These decisions are strongly in point, and decisive of the question; indeed, they do but affirm what this court has heretofore decided, in the case of *Outlaw, et al., v. Yell, use, &c., 8 Ark., 352.* In this case, the probate court of Crawford county was a court of competent jurisdiction in such cases, but not rightfully in this case, because neither the persons nor the property of the minors was within the territorial limits of the county. The minors petitioned the court that Norton should be made their guardian; he accepted the appointment, and the other defendants, his sureties, entered into bond for the faithful discharge of his duties as such guardian. Under the power and authority thus conferred, he took the property of the minor children of Miller into his possession, and, as they alleged, have squandered and wasted it; and when he and his sureties are called to an account upon their bond for such waste, we hold that they are estopped by their admissions in the bond from doing so. And the same rule applies, with equal force, to the further proceedings had in the probate court of Sebastian county, to which the case was irregularly transferred; because, no matter how irregular the proceedings of that court may have been, Norton, the guardian, by the voluntary submission of the settlement of his guardianship to that court, is estopped from denying its jurisdiction. The principle upon which estoppel rests, is not that the fact does not exist, but that the party is estopped from raising the question of its existence. Nor does the fact that part of the defendants (the sureties on Norton's bond) did not submit to such jurisdiction, affect this question. Their liability is conditional, and arises upon a valid bond executed in Crawford county, and they were not otherwise parties to the record.

The defendants bitterly complain in their answer that the settlement made by Norton with the probate court, charged him with a larger amount than was really due his wards. If

such was the case, Norton should have excepted and appealed from the decision of the probate court. This he did not do; and therefore, unless for fraud, the settlement is conclusive upon him, and as a consequence upon his sureties. Norton's account current for settlement, was filed on the 14th of January, 1852, and was subsequently restated and approved by the court, on the 18th day of July, 1854. On the 7th day of September, 1854, Norton was displaced as guardian, and defendant, Wheeler, was appointed guardian for all of said minors except two.

.However erroneous we should hold these proceedings to be, upon a direct issue to set them aside, still when they collaterally arise, as they do in this case, we must hold them sufficient to require the parties to account to the heirs of Miller for the estate which, it appears, remained in Norton's hands upon settlement, or afterwards during his guardianship.

In the further investigation of this case, the next question for our consideration is, whether the complainants are entitled to equitable relief upon the state of case disclosed by the bill. The defendants have, by answer, raised this question as fully as it would be if presented by demurrer, and insist that the complainants have severally, not jointly, a right of action against Norton and his sureties upon the bonds as executed by them; and that the liability of each is limited to the bond so executed, and for all which the complainants have a clear remedy at law.

To determine this question, we must briefly review the case as made by the bill.

It appears that Joseph Miller, a resident of what was then Crawford county, in the year 1848, died intestate, leaving a widow and eight children, and property, real and personal, of considerable value; that Norton, in 1849, married the widow of Miller, and was, on the 9th of January, 1851, appointed, by the probate court of Crawford county, guardian for each of said children, by separate orders of appointment and letters of guardianship, and entered into separate bonds, with surety, to

8

each of his wards, in the penal sum of four thousand dollars, with the usual conditions for the performance of his trust. Subsequently, a large amount of money and property came to the hands of Norton, belonging to his wards, as well as real estate, the rents of which were of great value; that Norton transferred his guardianship to Sebastian county, where, by an order of the probate court of that county, the defendants, Grimes, McDonald and Atkinson, sureties upon Norton's bond to Martha E. Miller and Charles Miller, were released and discharged from further liability, and that James P. Spring and Solomon F. Clark became sureties for Norton upon bonds' to these two heirs; and that, in order to save them harmless as such sureties, Norton conveyed to them, by deed of mortgage, real estate of great value; and that Nicholas Spring, as the surety on the bond to Mary Jane Miller; Adolphus Meyer and Jeremiah Kanady, on the bond to Henry Miller; John F. Wheeler as surety on the bond to Emma Miller, and John McCannon and Asa Clark as sureties on the bond to Joseph Miller, severally obtained from Norton mortgages on real estate and personal property of great value, which was only partially incumbered. The balance appearing to be due and unsettled by Norton, upon his last settlement, was fourteen thousand one hundred and fifty-nine dollars and seventy cents, which—together with the sum of about two thousand dollars, which, it is charged, came to his hands since his last settlement and before his discharge as guardian—was the sum claimed by the complainants to be due from Norton and his sureties to them.

Complainants charge that there were several items omitted in the settlement, which, if allowed, would increase the amount in the guardian's hands, but there is no allegation of fraud in the settlement, on account of which they claim that it should be set aside and the account restated; that Norton left the State and had gone to parts unknown to complainants; that he was wholly insolvent, and that there was no other property remaining which belonged to him, except that mortgaged to his sureties, the defendants; that, although the defendants are bound

on several bonds to different wards, the property mortgaged to them is held in trust for the benefit of the complainants jointly ; and that whatever amount may remain due, after the sale of the mortgaged property, should be paid by the sureties jointly, as of joint sureties upon one bond.

This is substantially the case made by the bill, and upon consideration of which we have failed to discover the equitable grounds upon which it rests ; and, at the outset, the inquiry arises, why was the settlement of this case withdrawn from the probate court ? No final settlement had been made when the probate court discharged Norton from his guardianship and appointed his successor; no order was made requiring him to pay over the money found due, upon settlement; and, until such order requiring him to pay over the money and estate in his hands to his successor, no legal liability rested upon Norton to make such payment, and until he was in default for not having made such payment, no liability rested upon his sureties to pay. *Jones, et al., v. State, use, &c., 14 Ark., 170; State, use, &c. v. Croft, 24 Ark., 550.*

If any intervening cause incumbered or hindered a recovery at law, it should have been stated in the bill, and in its absence there is no basis laid for the exercise of chancery jurisdiction, not even against Norton alone, much less his sureties, whose liability is conditional. The rule, as laid down by this court in *Clark v. Shelton, 16 Ark., 480,* is, that it is only where the jurisdiction over the principal is clearly established, with the ultimate responsibility of the sureties, that the chancery court can exercise jurisdiction over them ; a liability which, however, is incidental to, and dependent upon, the undoubted right of the court to jurisdiction over the principal ; and as no equitable jurisdiction is shown to exist, upon which a decree could be rendered against Norton, there is clearly no basis laid for making his sureties parties to the suit, not even if they had all been bound to secure the payment of one bond.

Norton's undertaking as guardian was several and not joint. He was the separate guardian of each ward, as much so as if

different persons had been appointed guardian for each; and whilst it is true that the money which came to his hands was a common fund, to which they were entitled as heirs of Miller, it was received by him under his trust, not as a joint fund for all of them, but for each of his wards separately, and he had no authority to receive it otherwise. It was irregular for him to make a joint settlement of his several guardianships, with the court; but he should properly have charged himself with the amount due to each, and been credited by the actual expenditures for each ward separately. If such was not the case, in an action at law upon the guardian's bond, the plaintiff could not properly aver that the guardian had received money due to him *individually*, because it would be claimed as a joint fund; nor could his wards join in an action at law for its recovery, because their right to recover would be against different parties, under separate contracts, and thus they would be deprived of all remedy at law, either jointly or severally. It is evident, therefore, that the heirs of Miller should not have been joined as complainants; nor could their guardian and his sureties upon the several bonds be sued jointly, or held to account to the complainants beyond their liability upon each separate bond. In *Wren, et al., v. Gayden*, 1 *How.* (*Miss. Rep.*) *366*, a case in many respects similar to the one under consideration—where a suit in chancery had been brought by several wards against their guardian—it appears that some informal division of property had been made between the wards before Gayden was appointed guardian; but that the whole of the property remained in his possession for a time, and was afterwards delivered to most of his wards, for whom, by separate appointments, Gayden had been made guardian. All of his wards joined as complainants in a bill against him, charging him with fraud and willful neglect and waste of their property. Under this state of case, the court, when considering a demurrer to the bill, said: "So far as Gayden is sought to be charged in his character of guardian, there is no privity of interest between the complainants, no legal dependence between th

claims sought to be enforced, for Gayden, having executed separate guardian bonds, cannot be held responsible to his wards jointly; his liability as guardian to a portion of the complainants is separate and independent."

It may be remarked that although part of the property had been paid over to several of the wards, yet the suit in which the complainants joined was for an account of property wasted and squandered by the guardian, and fraudulently withheld from them, which makes that a much stronger case than the one before us; and yet the Supreme Court of Mississippi held, as we think correctly, that the rights of the complainants and the liabilities of the guardian were separate and distinct, and could not be joined in the same action.

The other material questions for our consideration have been fully settled by the previous decisions of this court. In *Moren, et al., v. McCown, et al., 23 Ark., 93,* after a brief reference to several of our former decisions, which, under the peculiar circumstances of the case, had denied to the probate court the exercise of jurisdiction, Mr. Justice FAIRCHILD, who delivered the opinion of the court, said: "They all concede the jurisdiction of the probate court to determine the responsibility of the administrator, upon the admitted assets of the estate, and that is precisely what the probate court, in this case, was prohibited from doing, by withdrawing the administration of Samuel Moren's estate from the probate court of Hempstead county to the circuit court sitting in chancery. Ordinarily, the liability of the sureties in an administration bond rests alone upon the bond, upon which the legal remedy is adequate to its determination only in a court of law, and an action at law upon the bond is not sustainable until the probate court has adjusted the account of the administrator, and ordered him to pay over an amount found to be in his hands. *Baker v. The State, 21 Ark., 408.* And the same principle has been applied by this court to the bonds of guardians and collectors. *Sebastian v. Bryan, 21 Ark., 450; Jones v. The State, 14 Ark., 172.* The policy of our law is to hold the remedy on an official bond, in a court of law, sub-

ject to the action of the tribunal established to adjust the accounts of the party, who, by his default, is alleged to have forfeited his bond." The court then reviewed the case of *Clark v. Shelton,* and proceeded: "But although we do not decline to follow the case of *Clark v. Shelton,* we are not inclined to extend its principles to a case presenting a dissimilar state of facts; in that case the jurisdiction over the principal was unquestioned. That state of case, with the ultimate responsibility of the sureties, extended the jurisdiction of chancery over them, which was incidental to, and dependent upon, the undoubted right of the court to take cognizance of the acts of the principal."

In view of these and other cases, and after the most careful consideration, we have reluctantly come to the conclusion that this bill—the sufficiency of which is expressly raised in the answer by way of demurrer—can not, upon any known principles of equity, be sustained. We say reluctantly, because we can very plainly see that the estate of these complainants has been so greatly mismanaged that it is improbable they will ever get what is really due them, and that the recovery may yet, for a time, be delayed; but we can not, for that reason, depart from our previous decisions, which, we think, properly define the jurisdiction of the probate court, and protect it in the exercise of its constitutional powers. The bill wholly fails to show such facts as would justify the parties in withdrawing the case from that court. Norton had not closed his guardianship; his last settlement was but a resting point, a basis for further settlement, and, before he should have been permitted to resign his guardianship, he should, under the provisions of the 36th section of Digest, chapter 81, have been attached or imprisoned until he performed his duty in that respect. It appears, moreover, that Wheeler had been appointed guardian to all of these minors except two; and, as the successor of Norton, it became his duty to proceed against him, and to recover any amount of the estate of his wards remaining unaccounted for in Norton's hands, for there is an express covenant,

in the condition of the guardian's bond, that upon the determination or ceasing of the guardianship, or when the heirs become of age, the guardian will account, &c.

It has been suggested by counsel, in argument, that the children of Miller are now of age, and if so, they have a clear remedy at law against either or both of their guardians, and their respective sureties, to the extent of the liability upon their several bonds.

From this view of the rights and liabilities of the respective parties, that feature of the bill, and the decree of the court based upon it, which treats the sureties upon the several bonds as jointly liable to the heirs of Miller, is palpably erroneous. The liability of the sureties was limited to the terms of each contract, and derived its force from the consent of the contracting parties. The agreement of the sureties was that they would be bound in a penal sum for the faithful discharge of the duties of the guardian towards the particular ward to whom the bond was given, and had no reference whatever to any other guardianship or bond, and courts of equity, no more than courts of law, can bind the parties beyond their legal liability, according to the terms of their agreement.

The mortgages given by Norton upon his estate, to save his sureties from loss by reason of their suretyship, is governed by the same rule. Each mortgage was given for the security of the parties to whom given, and created a lien upon the property thereby conveyed, from the time they were respectively executed and filed in the recorder's office for record. Any excess of property after sale, or of money arising from sale, over what is necessary to indemnify the sureties to whom given, would revert to the benefit of the next lien, to Norton, or to one who might hold his equity of redemption.

Let the decree of the Sebastian circuit court be reversed and set aside, with instructions to dismiss the bill for want of urisdiction.