SEWELL *v.* BENSON.

4-5483                                    128 S. W. 2d 683

Opinion delivered May 22, 1939.

*Nash, Ahern, McDermott, McNally & Kiley; E. O. Westfall* and *G. R. Haynie,* for appellants.

*Streett & Harrell, L. B. Smead* and *Gaughan, Mc-Clellan & Gaughan,* for appellees.

SMITH, J. This suit was brought by Arthur W. Sewell and by the City National Bank & Trust Company of Chicago, as guardian of John W. Sewell, a minor, and a brother of Arthur. The complaint contained the following allegations.

William L. O'Connell had been appointed and had served as guardian of both Arthur and John from August 17, 1933, until his death on July 24, 1936. The plaintiff trust company was appointed guardian in succession of the estates of both minors, and has since served and is now serving as the guardian of John. Arthur is now of full age and sues in his own right.

The complaint alleged that Arthur and John owned an eighty-acre tract of land in Ouachita county, on which, for more than ten years, large quantities of crude oil had been produced, which were sold to and delivered into the pipe lines of the Texas Company, a corporation, and

for which the Texas Company was, on March 7, 1937, largely indebted to said minors.

On December 21, 1935, F. P. Benson filed petition in the probate court of Ouachita county asking to be appointed curator for said minors, representing to the court that said minors had property coming to them of the value of $500, and that there was great danger of said property being lost or destroyed. The appointment was made as prayed, and Benson executed bond in the sum of $1,000, conditioned as required by law.

On March 7, 1937, Benson, as curator, collected from the Texas Company the sum of $15,822.26, "being the principal amount then due from said Company to said minors' estates for oil run prior to said date." On March 17, 1937, Benson filed in the probate court a petition asking that he be allowed three per cent of this money as commission, amounting to $474.66, and that he be authorized to pay L. B. Smead "the sum of $500.00 for alleged services rendered and to be rendered as attorney for said curator." The order prayed was made.

The complaint further alleged that Benson made application for appointment "as a result and in furtherance of a conspiracy entered into between the defendants, F. P. Benson, L. B. Smead, and the Texas Company, to cheat and defraud said minors in their estate by collecting large sums of money from said estate as commissions and attorney's fees, and to avoid the payment of interest by said Texas Company on royalties due for oil runs from the lands of said minors, which royalties were withheld by said company without lawful authority, reason, or excuse," and that no notice of this application or of the orders of the court thereon were given the minors or O'Connell, their then acting guardian. It was alleged that neither Smead, as attorney, nor Benson, as curator, performed any services for the minors for which a charge could be made.

It was alleged that Smead was at the time the legally retained attorney of the Texas Company in all matters and litigation in Ouachita and other counties in southern Arkansas with full power and authority to appear in

court and represent said company in all legal matters involving the interests of said company, and was such attorney when the said sum of $15,822.26 was paid the curator. "That said defendant, Texas Company, by and through its said attorney, aided, abetted, and assisted in procuring the appointment of said F. P. Benson as such curator with the design and purpose of avoiding payment of the interest then due and to become due on the funds in its hands belonging to said minors;" that the curator made no interest charge against the Texas Company, nor did he collect or attempt to collect any interest from said company on long past due accounts owing by said company to said minors, but, on the contrary, accepted and receipted for said sum without collecting or attempting to collect any interest due thereon; that Benson, Smead and the Texas Company were all three fully advised that the minors "then and there had a legal Domiciliary Guardian of the estate of said minors in the City of Chicago, Illinois, who was then and there clothed with complete power and authority to collect, preserve, protect all funds and other property due and to become due and belonging to said minors." It was further alleged that at the time of the payment to the curator by the Texas Company the guardian was negotiating with the Texas Company for the payment of royalties due the minors and the interest thereon, and had made demand of payment upon the Texas Company.

It was further alleged that a decree was rendered by the chancery court on December 12, 1933, in a suit between Benson, as curator, and the Gulf Refining Company, in which O'Connell, as guardian, had intervened. This suit involved royalties on oil produced from the minors' lands. It was there adjudged "that all moneys, credits, and effects adjudged to be the property of said minors, Arthur W. Sewell and John W. Sewell, should by the pipe line companies and all other companies or corporations holding the same be paid directly to William L. O'Connell, the domiciliary guardian of the person and estate of said minors;" that Benson had, on a prior date, to-wit, December 19, 1924, procured his appoint-

ment as curator, and was still serving as such curator on December 21, 1935, the date of his said second appointment, and continued to act as curator under his first appointment in 1924 until April 21, 1937, when his final settlement under said appointment was confirmed and approved and his sureties discharged.

That one of the questions involved in the litigation in the chancery court referred to was the question of the compensation of the curator and the fee to be paid his attorney, and a consent decree was entered authorizing O'Connell, then the guadian of the person and estate of said minors, to pay the curator the sum of $500 for his services, and to pay J. Bruce Street, his attorney, the sum of $2,500.00 for services, and the decree recited that the compensation thus allowed should be in full payment for the services theretofore or which would thereafter be rendered. Those sums were paid by the guardian.

It was also provided in said decree that Benson should resign as curator when the litigation then pending should be finally determined, and "such resignation was one of the conditions precedent to the agreement then entered into for the payment of this compensation." The decree so recites.

It was further alleged that Benson, Smead and the Texas Company knew, when the application was made on December 21, 1935, for Benson's second appointment, that this consent decree was being violated, and that Benson had no right to be again appointed curator, and that he and his attorney practiced a fraud upon the probate court in procuring said appointment and in procuring the order allowing compensation to the curator and to the attorney, the probate court being ignorant of the facts and the action of the court being induced by the false representation that the appointment of a curator was necessary for the safety and protection of the estate of said minors.

It was alleged that the order of the probate court was void for the reasons stated, and it was prayed that it be canceled and that Benson be ordered to account to plaintiffs for all money collected by said curator and due

the minors subsequent to his appointment on December 21, 1935.

A demurrer was sustained to this complaint, and from that order is this appeal.

We have quoted rather extensively from the complaint, as the question here presented is the sufficiency of its allegations to state a cause of action within the jurisdiction of the chancery court. Defendants demurred to the complaint upon the ground that the chancery court had no jurisdiction of the subject-matter of the action, nor of the persons of the defendants, and that the complaint did not state facts sufficient to constitute a cause of action against them.

Without reviewing the facts, which, for the reason stated, have been fully recited, we announce our conclusion that a cause of action was stated against all three defendants. Whether that cause of action was within the jurisdiction of the chancery court is the real question in the case. The contention of defendants is that, if a cause of action is stated, plaintiff's remedy is by appropriate proceedings in the probate court which court has exclusive jurisdiction of all probate matters. ·

The complaint was filed and summons thereon was issued April 12, 1938. On April 21, 1937, an order was entered by the probate court approving the final settlement of the curator and discharging him and his bondsmen under the appointment made December 19, 1924. It does not appear that the curator made any report to the probate court under his second appointment, but the order discharging him was made subsequent to the date of this second appointment.

That a cause of action was alleged is not seriously questioned. Whether the chancery court had jurisdiction of this cause of action is the real and serious question in the case.

The insistence for the affirmance of the decree from which is this appeal is that it is attempted to lift the case out of the jurisdiction of the probate court and to pray a judgment which only the probate court has jurisdiction to render.

That the probate court had the jurisdiction to appoint a curator for the nonresident minors, having an acting guardian in the state of their residence, is not questioned, and that the probate court has the jurisdiction to require settlement by the curator is equally certain. But this case presents the anomalous situation of a person assuming to act as curator upon a second appointment as such before his discharge under a prior appointment. The complaint alleges that the curator had collected the money on March 7, 1937, and that he was discharged as curator on May 21, 1937. It was charged that this collection was made as a result of a conspiracy between the curator and two others who are not parties to the probate court proceeding, nor subject to the order and judgment of that court, these being the attorney and the Texas Company.

It was alleged that the curator had been in possession of the money for nearly two months before the approval by the court of his final settlement under his appointment of 1924.

We think the chancery court has jurisdiction of the cause of action alleged, for the reason, if for no other, that relief is prayed which the probate court does not have the jurisdiction to grant. Judgment is prayed, not only against the curator, but also against the attorney and the Texas Company as well, and the probate court could, in no event, render judgment against the two latter.

It was said in the case of *Shane* v. *Dickson*, 111 Ark. 353, 357, 163 S. W.. 1140, that "The probate court has no jurisdiction of contests between an executor or administrator and third parties over property rights or the collection of debts due the estate. Its jurisdiction is confined to the administration of assets which come under its control, and, incidentally, to compel discovery of assets. (Citing cases)."

Here, there appears to be no necessity for the continuance of the curatorship, indeed, the curator has been discharged under one of his appointments. The 4th headnote to the case of *Beckett* v. *Whittington*, 92 Ark.

230, 122 S. W. 633, reads as follows: "An order of the probate court appointing an administrator in succession after the former administrator's final settlement has been approved is without jurisdiction and void."

The curator has made a final settlement, which had been approved when the suit was brought, and it was alleged that he and others had conspired to defraud the estate, and the relief prayed against these parties is of a nature which the probate court does not have the jurisdiction to grant, but which is within the jurisdiction of the chancery court. *Reinhardt* v. *Gartrell,* 33 Ark. 727; *Myrick* v. *Jacks,* 33 Ark. 425; *West* v. *Waddill,* 33 Ark. 576; *Jones* v. *Graham,* 36 Ark. 383; *Hankins* v. *Layne,* 48 Ark. 544, 3 S. W. 821; *Nelson* v. *Cowling,* 89 Ark. 334, 116 S. W. 890; *Beckett* v. *Whittington,* 92 Ark. 230, 122 S. W. 633; *Fogg* v. *Arnold,* 163 Ark. 461, 260 S. W. 729.

One of these former minors is now of full age; the estate of the other is in charge of his guardian in the state of his residence. It appears that nothing remains but to fix the liability of the defendants to the plaintiffs, and the probate court cannot grant full and complete relief. We conclude, therefore, that a cause of action within the jurisdiction of the chancery court was alleged, and the decree will be reversed and the cause remanded with directions to overrule the demurrer.