THE TEXAS COMPANY *v.* SEWELL.

4-6240                                        149 S. W. 2d 925

Opinion delivered March 17, 1941.

*J. Bruce Streett, L. B. Smead* and *Gaughan, McClellan & Gaughan,* for appellant.

*O. E. Westfall* and *G. R. Haynie,* for appellee.

HOLT, J. This cause comes here on appeal for a second time. The decision of this court on the former appeal is reported in *Sewell* v. *Benson,* 198 Ark. 339, 128 S. W. 2d 683. The substance of the complaint in the instant case is fully set out in the opinion on the former appeal and it is unnecessary to restate it here.

The two questions involved upon the former appeal were: (1) Whether the complaint was good on demurrer; and (2) whether the chancery court had jurisdiction of the cause. We held there that a cause of action was stated and within the jurisdiction of the chancery court. The decree was reversed and the cause remanded with directions to overrule the demurrer.

Upon remand appellees amended their complaint to include a prayer for interest from The Texas Company, and appellants filed appropriate answers denying all material allegations.

In brief the complaint charges (we quote here from appellants' brief) "that on December 21, 1935, The Texas

Company, acting through its attorney, L. B. Smead, fraudulently procured the appointment by the Ouachita probate court of F. P. Benson, as curator for Arthur W. Sewell and John W. Sewell, minors, who were residents of Chicago, Illinois; that on March 7, 1937, Benson, as curator, collected from The Texas Company $15,822.86 oil royalties due the minors, and on March 17, 1937, Benson fraudulently and in furtherance of the alleged conspiracy procured an order from the probate court allowing himself three per cent. commission, amounting to $474.69, and an attorney's fee of $500 for L. B. Smead, as his attorney.''

They prayed that the order of the probate court allowing the three per cent. commission amounting to $474.69 to F. P. Benson and the attorney's fee of $500 to L. B. Smead, be canceled and set aside, and that the sureties on Benson's bond, J. D. Reynolds and Howard East, along with the curator, Benson, be ordered to account for all moneys collected by such curator and belonging to said minors and for judgment against all of the appellants (defendants below) for all moneys collected by said curator belonging to said minors, together with six per cent. interest thereon.

Upon a trial there was a decree in favor of appellees against appellants, F. P. Benson and The Texas Company, for the sums that had been allowed by the probate court to L. B. Smead, as attorney's fees, and to F. P. Benson, as curator, and against The Texas Company for six per cent. interest; and against appellees and in favor of L. B. Smead and the sureties on the curator's bond, J. D. Reynolds and Howard East.

The court further found that neither The Texas Company, attorney, L. B. Smead, nor the curator, Benson, entered into any conspiracy against appellees, and that their acts were not intentionally fraudulent.

Appellants have appealed and appellees cross-appealed.

The questions presented here are whether appellant, The Texas Company, is liable to appellees for legal interest (six per cent.) on monthly royalty payments due

appellees which were withheld by said company, and by the company, paid over to appellant, F. P. Benson, without authority of law; and whether all, or any, of the appellants are liable to appellees for the commissions paid to appellant, F. P. Benson, and the attorney's fee paid to L. B. Smead, under an order of the probate court of Ouachita county, out of the funds the said F. P. Benson, as curator, held for the Sewell minors; and whether the curator, Benson, and his sureties, J. D. Reynolds and Howard East, should be liable on the curator's bond.

The record reflects that in 1922 appellant, The Texas Company, leased from Arthur W. Sewell and John W. Sewell, negro minors, through their legally appointed guardian, A. Sewell, their father, (appointed guardian by the Ouachita probate court August 19, 1922), eighty acres of oil land in Ouachita county, Arkansas, reserving an 1/8 royalty interest, a 1/16 interest being the property of the minors. At the time this lease was executed A. Sewell and his minor sons were residents of Ouachita county, Arkansas.

Prior to May 7, 1923, A. Sewell, guardian, took his wards to Cook county, Illinois, and established their residence.

May 25, 1923, at a regular term of the Ouachita probate court, A. Sewell, guardian for these minors, presented to the court his petition and first and final settlement, and prayed for approval and final discharge. Upon a hearing on this petition the court entered an order in which it is recited:

". . . The court further finds that the said guardian has moved to Chicago in the state of Illinois, and desires to build a home there, and has taken his wards who are his children to Chicago with him; that the said guardian files a certified copy of his letters of guardianship, together with a certified copy of his bond, showing that he has qualified as guardian for his said wards in probate court in Cook county, state of Illinois, and he asks that the said funds which are now in his hands as guardian, and which are deposited in the Merchants &

Planters Bank of Camden, Arkansas, to be transferred by said bank, to the Illinois Merchants Bank & Trust Company of the city of Chicago, state of Illinois. . . ." The order approved the settlement and discharged the guardian's bondsmen and further ordered that "the said A. Sewell is discharged herein as guardian for the said Arthur W. Sewell and John W. Sewell, minors. . . ."

Thereafter appellee, City National Bank & Trust Company of Chicago, Illinois, succeeded A. Sewell as guardian of the minors in Cook county, Illinois.

Here it may be stated that in addition to the eighty acres leased to The Texas Company, these minors had inherited 160 acres of other land which they had leased through their guardian to the Gulf Refining Company.

Shortly after the execution of the lease to The Texas Company, oil was discovered on this lease and appellant, The Texas Company, sought legal advice from L. B. Smead, and another Arkansas lawyer, as to the proper party to whom it should make royalty payments. Upon being advised that it would be necessary to make these payments to a curator or guardian for these minors appointed by the probate court of Ouachita county, Arkansas, appellant, F. P. Benson, was appointed curator for these minors by the Ouachita probate court December 19, 1924.

Thereafter The Texas Company made all royalty payments due these minors, and which under the lease were to be paid to them monthly, to F. P. Benson, as curator, who in turn remitted these royalties as received by him to the Chicago guardian of the minors, until October 1, 1933.

In 1933, suit was filed in the Ouachita chancery court by F. P. Benson, curator for the Sewell minors, against the Gulf Refining Company (in which suit the Chicago guardian for the minors intervened), for certain royalty payments which it was alleged the Gulf Refining Company owed the minors but was withholding payment. This suit was compromised and settled by the parties.

Out of the money paid the minors in settlement, an attorney's fee of $2,500 was paid, L. B. Smead's share being $625.

In the decree it was provided that curator Benson should be paid the sum of ''$500 for his services heretofore rendered, and which may hereafter be rendered in the prosecution of said cause, that his attorney, J. Bruce Streett, should be paid the sum of $2,500 for his services heretofore rendered and which should thereafter be rendered in the prosecution of that litigation to a final determination; to which all the other parties in the action then agreed.''

The said decree further provided that, after the payment of said sums to the curator and the attorney, such payments should be in full and complete settlement and in full payment of services rendered and to be rendered in that cause or in connection with said curatorship.

It was further provided that curator Benson agreed to resign as curator when that cause should be finally determined, and that ''such resignation is one of the conditions precedent to the agreement entered into for the payment of the compensation herein provided for the curator and his attorney.''

The decree further provided ''that upon final determination of this cause all moneys, credits and effects adjudged to be the property of the said minors, Arthur W. Sewell and John W. Sewell, shall by the pipe line companies and all other persons or corporations holding the same, be paid directly to Wm. L. O'Connell, the domiciliary guardian of the person and estate of said minors.''

Following this decree, F. P. Benson, without resigning his curatorship as the decree directed, and while still acting as guardian for these two minors under his appointment made in 1924, again on December 21, 1935, petitioned the Ouachita probate court and had himself appointed guardian for these minors for a second time.

This latter appointment was made on the suggestion and with the knowledge of L. B. Smead. We quote

40

from his testimony: "Q. When Mr. Benson was appointed curator in 1935, that was at your suggestion? A. In a way it was. . . ."

As has been indicated, appellant, The Texas Company, ceased making royalty payments to these minors on October 1, 1933, and February 26, 1937, there had accumulated in the hands of The Texas Company royalty payments belonging to these minors in the sum of $15,-822.86. A check for this amount was forwarded to Benson, as curator, by The Texas Company and received by him on March 7, 1937. Demand on The Texas Company for payment of this amount direct to it had been made on March 2, 1937, by appellee, City National Bank & Trust Company, guardian for these minors in Cook county, Illinois.

Upon receipt of this check, the Ouachita probate court, upon Benson's petition, entered an order authorizing him as curator to pay himself a commission of three per cent. out of these funds received from The Texas Company, amounting to $474.69, and in addition to pay to his attorney, L. B. Smead, a fee of $500. Benson then remitted to the City National Bank & Trust Company, guardian in Cook county, Illinois, what remained out of the $15,822.86 check after paying his commission of $474.69 and the $500 attorney's fee.

Appellants attempt to justify their actions, as outlined above, under the provisions of § 6236 of Pope's Digest which is as follows: "If any minor residing without this state shall have any estate within this state, the court of probate in the county where the estate or any part thereof may be shall appoint some competent person to be curator of the estate of such minor; and the curatorship which shall be first lawfully granted of the estate of any such minor shall extend to all the estate of such minor within this state, and shall exclude the jurisdiction of every other court."

We are of the view, however, that this section, which is § 12 of the act of April 22, 1873, p. 185, does not apply in the instant case for the reason that this section does

not take into consideration a case, such as the one presented here, in which the minor has a duly appointed and acting guardian in the state of his residence.

We think, however, that §§ 6293, 6294, and 6296 of Pope's Digest, which are §§ 38, 39 and 45, respectively, of the 1873 act, *supra,* do apply. These sections are:

"Section 6293. When any guardian and his ward are both nonresidents, and such ward may be entitled to property of any description in this state, such guardian on producing satisfactory proof to the court of probate of the proper county, according to law, that he has given bond and security in the state in which he and his ward reside, in double the amount of the value of the property, as guardian, then such guardian may demand or sue for and remove any such property to the place of residence of himself and ward."

"Section 6294. When such nonresident guardian shall produce an exemplification, under the seal of office (if seal there be) of the proper court in the state of his residence, containing all the entries on record in relation to his appointment and giving bond, duly authenticated, the court of probate of the proper county in this state may cause suitable orders to be made discharging any resident guardian, executor or administrator, and authorizing the delivery and passing over of such property, and also requiring receipts to be passed and filed if deemed advisable."

"Section 6296. Whenever it shall be made to appear to the court that any nonresident minor having a guardian or curator in this state has also a guardian in another state or territory, the court may authorize or compel the resident guardian or curator to deliver over to such foreign guardian all the property of such minor of which he may have the custody, and make a full and perfect settlement of his guardianship or curatorship, with such foreign guardian. The receipts of such foreign guardian shall fully discharge such resident guardian or curator and his sureties from all liability on account of the property so delivered to such foreign guardian."

We are of the view that the order of the Ouachita probate court, *supra,* May 25, 1923, was made and put into effect under these three provisions of the statute, and having thus complied with these sections, the guardian of these minors residing in Cook county, Illinois, had the right to receive all royalty payments due his wards direct from appellant, The Texas Company, without the intervention of an Arkansas curator.

As evidence that this is the proper construction to be placed upon the above sections of the statute, and the legislative intent, this court in *Landreth* v. *Henson,* 116 Ark. 361, 173 S. W. 427, construed § 6289 of Pope's Digest (enacted in 1917), which is as follows:

"When a nonresident minor owns real property in this state and has a guardian or curator in the state where he resides, the court of probate of the county where such lands or a greater part thereof are [is] situated, may authorize such guardian or curator to lease said lands, or any part thereof, for the production of oil or gas upon securing an order from the probate court and complying with the terms and provisions of the act."

It is there said: "The question is solely whether the Missouri court had jurisdiction to appoint a guardian, so that the courts of this state might in consequence thereof authorize a sale of land here to be made by such guardian. The judgment of the Missouri court in appointing the guardian there is at least presumptively decisive of the question, and we think, under the authority cited, the court had, upon the facts shown in this case with respect to the legal domicile and residence, jurisdiction to make the appointment."

In a later decision, *Ingraham* v. *Baum,* 136 Ark. 101, 206 S. W. 67, this court construed § 6288 of Pope's Digest which is as follows:

"When a nonresident minor owns real estate in this state, and has a guardian in the state or territory in which he resides, the court of probate in the proper county may authorize such guardian, either in person or by his agent acting under the power of attorney, to sell

such real estate and receive the proceeds of such sale. Provided, that before any order shall be made for the payment of money to a nonresident guardian, or for the sale of the property of his ward by him, he shall produce satisfactory evidence to the court that he has given bond and security as guardian, in the state in which he and his ward reside, in at least double the amount of the sum to be paid to him, or in double the amount of the appraised value of the property to be sold; and the proof shall consist of a copy of the record, setting forth his appointment of guardian, and also a copy of his bond executed as such, duly authenticated.''

In discussing this section it was there said: ''The Legislature had at first dealt with the estate of resident minors, and had provided how such property might be sold. The Legislature found it wise to prescribe terms under which that property might be sold to protect the infant's interest. The whole subject was under the control of the Legislature, which recognized that there would be nonresident minors owning property in this state whose lands should also be sold, and provision for that contingency was made in § 37 [now § 6288, Pope's Digest].''

We think, therefore, after this valid order was made by the Ouachita probate court on May 25, 1923, *supra,* that the subsequent appointment of Benson as curator for these minors by an order made in 1924, was unnecessary and in the circumstances of this case was unauthorized.

As has been indicated, one of the conditions set out in the decree in 1933 in the Gulf Refining case, under which curator Benson and his attorney were allowed and paid certain fees, was that he should resign immediately as curator for these minors.

While no formal resignation was ever made by Benson, his second appointment in 1935 by the Ouachita probate court must have been made on the assumption that he had resigned in accordance with the terms of the decree in this Gulf Refining case. This second appointment, however, was likewise unnecessary, without author-

ity, and void in view of the prior valid order of the probate court of May 25, 1923, and appellants are liable, as the trial court found, to these minors for the three per cent. commission of $474.69, together with a subsequent commission paid Benson of $265.68, court costs of $19.86, and the $500 paid to L. B. Smead, attorney.

We are further of the view that appellant, The Texas Company, was correctly held jointly liable with curator Benson for these commissions, costs, and the attorney's fee of $500, and also, under the express contract (its lease from these minors) as well as an implied contract, appellant, The Texas Company, was bound for six per cent. interest on these royalty payments as they became due to these minors beginning with the payment due October 1, 1933. The Texas Company admits owing this money and no legal excuse has been shown for their failure to pay when each royalty payment became due.

We are also of the opinion that appellant, F. P. Benson, curator, and J. D. Reynolds and Howard East, sureties on his bond executed following his second appointment in 1935, are jointly liable in the amount of the bond for the commissions paid to curator Benson and the $500 paid to attorney Smead. Although this bond was executed under a void probate court order, it does not follow that the curator and his bondsmen would not be liable to the extent of $1,000, the amount of the bond, for the wrongful act of curator Benson in paying the three per cent. commissions to himself and the attorney's fee to Smead out of the funds belonging to these minors, and which should have been paid directly to their domiciliary guardian in Cook county, Illinois, without the intervention of a local curator.

In *Norton* v. *Miller*, 25 Ark. 108, this court said: "The case of *Iredell* v. *Barber*, 9 Iredell's Rep. (N. C.) 234, is strongly in point. King had been appointed guardian for Mrs. Fane, a lunatic, and entered into bond with surety for the faithful performance of his duties, and, in the condition of his bond, recited his appointment as guardian by the court—a court, however, had no power

to make the appointment, and this want of jurisdiction to appoint was relied upon by King and his sureties in bar of a right of recovery upon the bond. In considering which, PEARSON, judge, said: 'It is true the court had no power to appoint King the guardian of Mrs. Fane, and authorize him to take her estate into possession, but the defendant will not be heard to make this objection; he concurred in the act, his bond solemnly asserts that . . ., and after he has taken the estate into his possession, and wasted it, it is not for him to say that it was unlawful, and therefore, he is not bound by his undertaking deliberately entered into'."

We conclude, therefore, that the decree, on direct appeal should be, and is, affirmed. On cross-appeal, judgment is rendered here against Benson for the commissions he collected and for the payment of $500 made to Smead, and against Benson's bondsmen for $1,000. Judgment is rendered against L. B. Smead for $500.

HOLT, J. (On rehearing). In the brief in support of the petition for rehearing the opinion is interpreted as holding that the probate court was without jurisdiction to appoint a curator for the non-resident minors who had an acting guardian in the state of their residence, and a headnote to this case as reported in the Law Reporter (March 17, 1941) is to that effect. But there was no intention to overrule or qualify the opinion on the former appeal (198 Ark. 339, 128 S. W. 2d 683) where we recognized the existence of that jurisdiction in a proper case. What we did say is that: "We are of the view, however, that this section, which is § 12 of the act of April 22, 1873, p. 185, does not apply in the instant case for the reason that this section does not take into consideration a case, such as the one presented here, in which the minor has a duly appointed and acting guardian in the state of his residence."

In other words, § 12 of the act of April 22, 1873, appearing as § 6236, Pope's Digest, "does not take into consideration a case such as the one presented here" for the reason that there was no occasion or necessity for the appointment of a resident curator.

Rehearing denied.