EDWARD M. PRIMEAU, MAY E. MUELLER and EDWARD M. PRIMEAU, Executor of Last Will of Edward A. Primeau, v. GERTRUDE PRIMEAU, Guardian of Person and Estate of Louise A. Primeau, A Person of Unsound Mind, and LOUISE A. PRIMEAU, A Person of Unsound Mind, by GERTRUDE PRIMEAU, Her Guardian, Appellants, and ST. LOUIS UNION TRUST COMPANY, Trustee under Last Will of Edward A. Primeau.—297 S. W. 382.

Division Two, July 13, 1927.

**1. APPEAL: Upon Record Proper Only: Facts Taken as True: Renunciation of Will: Benefit of Widow.** No motion for a new trial having been filed in the trial court, and there being nothing before this court except the record proper, the facts set forth in the petition, upon an appeal by defendants from a judgment in favor of plaintiffs, are conclusively presumed to have been proven and are taken as true; and in this case such facts amply justified the trial court in finding that it was not for the best interest of the widow to renounce her husband's will and elect to take a child's part in his estate, but that it was for her benefit to accept the provisions of the will and take under it, when full consideration is given to her mental condition, her needs, the provisions made for her by the will and the disposition testator wished to make of his property, and the absence of any just claim upon his estate by the widow's sister, who as her guardian renounced the will and elected to take for her a child's part in his estate.

**2 RENUNCIATION OF WILL: Interested Parties: Election by Guardian of Insane Widow: Suit by Remaindermen: Jurisdiction.** The interest of the contingent remaindermen being completely swept away by a renunciation of the will by which they were given what remained of the portion given to the insane widow upon her death, they have a real interest in a suit to set aside a renunciation of the will and an election to take for her a child's part made for her by her guardian, and they are real parties in interest in a suit brought by them in the circuit court to remove the guardian and to set aside the renunciation and election made by her, and their petition gives the court jurisdiction.

**3. WILL: Insane Widow: Renunciation and Election by Guardian: Fraud.** The renunciation by the lawful guardian of a widow of unsound mind of her husband's will and an election to take for her a child's part under the

statute (Laws 1921, p. 111; Sec. 325, R. S. 1919) must be legally made, and are not legally made, but are fraudulent, if against the best interest of the widow; and where the facts make it plain that the renunciation and election to take a child's part gives to the guardian, as next of kin to the widow, the power finally to appropriate to her own use and benefit a large portion of such part, it cannot be held that the election was legal. An election by the guardian that, upon the admitted or proven facts, is clearly against the best interest of the widow, and deprives her of the wholesome benefits made for her by her husband's will, is illegal.

4. ———: ———: ———: **Power of Court of Equity.** A court of equity, and a court of equity alone, has power to set aside a renunciation of a will and an election made by the lawful guardian of an insane widow, and to make an election for her, where the election made by the guardian is illegal and fraudulent, or against the best interests of the widow, or has been made in bad faith and for the financial benefit of the guardian; and it also has power to make an election for the insane widow, where her lawful guardian has wrongfully refused to make an election for her and clearly under the facts it is for her best interests that an election be made.

5. ———: **Mismanagement of Estate: Removal of Guardian.** In making an election which brings to the insane widow an absolute estate in lieu of the right to use during her life the portion of her husband's estate given to her trustee by his will, her lawfully appointed guardian is not guilty of such neglect, misconduct or mismanagement of the estate as authorizes the probate court under the statute (Secs. 432, 492, R. S. 1919) to remove the guardian; but a court of equity has power to remove a guardian who has made an illegal election for the insane widow, and whose continued power as guardian to interfere with the arrangements made by the testator for the custody and care of his insane widow will constitute a continuing menace to the best interests of the widow.

6. ———: ———: ———: **Statutory Power of Equity.** The statute (Sec. 2436, R. S. 1919) gives to circuit courts a general control over guardians, curators, idiots, lunatics and persons of unsound mind, and such statute does not contravene the provision of the Constitution (Sec. 34, Art. 6) authorizing the appointment of guardians by the probate court. The power to remove a guardian for certain specified reasons has been given to probate courts (Secs. 432, 492, R. S. 1919), but the power of removal for other reasons remains in the circuit court, because either not taken away and given to the probate court, or was committed to the circuit court by said Section 2436.

7. **EQUITY: Power to Remove Guardian.** Even though a lawfully appointed guardian could be removed by the probate court for misconduct or mismanagement under the statute (Secs. 432, 492, R. S. 1919), the circuit court, as a court of equity, having acquired jurisdiction of the guardianship for the purpose of reviewing the fairness and legality of an election made by the guardian for the insane widow, has power to remove the guardian. Having rightfully acquired jurisdiction for the purpose of setting aside the election made by the guardian and to make an election for the widow, and having exercised that jurisdiction, the court has the power and the duty to retain jurisdiction and to exercise it for all purposes, and to remove the guardian in order to safeguard the best interest of the widow.

8. ———: ———: **Original and Appellate Jurisdiction.** The circuit court cannot remove a guardian on appeal from the probate court unless the question of removal was an issue in the probate court; but in an original proceeding brought in the circuit court, the court can remove the guardian, if the power to remove is rightfully invoked by the petition.

---

Corpus Juris-Cyc. References: **Appeal and Error**, 3 C. J., Section 851, p. 964, n. 1; 4 C. J., Section 2727, p. 777, n. 69. **Courts**, 15 C. J., Section 418, p. 994, n. 3. **Insane Persons**, 32 C. J., Section 162, p. 627, n. 94; Section 286, p. 665, n. 56; Section 287, p. 665, n. 60. **Wills**, 40 Cyc., p. 1974, n. 2; p. 1986, n. 43.

Appeal from Circuit Court of City of St. Louis.—*Hon. A. B. Frey,* Judge.

AFFIRMED.

*Anderson, Gilbert & Wolfort* for appellant.

(1) The petition confers no jurisdiction. It does not even claim to be brought by the real party in interest. Sec. 1155, R. S. 1919; Wiehtuechter v. Miller, 276 Mo. 322. (2) The circuit court has no jurisdiction to remove the guardian of an insane person. · Constitution of Missouri, sec. 34, art. 6; Secs. 2542, 492, R. S'. 1919. (3) A guardian cannot be removed except for the causes and in the manner provided by the statute. In re McMenamy, 270 S. W. 673; State ex rel. v. Bird, 253 Mo. 581. (4) The circuit court cannot absorb the powers of the probate court. Overton v. McFarland, 15 Mo. 315; Chandler v. Dodson, 52 Mo. 130; Scott v. Royston, 223 Mo. 585. (5) The statute provides that the guardian shall make the election. Sec. 325, Laws 1921, page 111. (6) The election made by the guardian is final. Young v. Boardman, 97 Mo. 181, 192. It is only where the guardian refuses to act that a court of equity has power to make the election for the insane widow. In re Estate of Connor, 254 Mo. 65, 95.

*Edward A. Feehan* and *Charles M. Ryan* for respondents.

(1) A court of equity, and only a court of equity, has jurisdiction to pass upon an election made by the guardian of an insane widow, and to substitute its judgment for that of the guardian. In re Estate of Connor, 254 Mo. 65. (2) Equity will not suffer a wrong to be without a remedy. Constitution of Missouri, art. 2, sec. 10; Cement Co. v. Gas. Co., 255 Mo. 1; State ex rel. v. Tittman, 103 Mo. 553; State ex rel. v. Rombauer, 104 Mo. 619; 21 C. J. sec. 188, p. 198. (3) The circuit court may remove the guardian of an insane person. Constitution of Missouri, art.· 6, secs. 22, 23; Sec. 2436, R. S. 1919; State ex rel. v. Bird, 253 Mo. 569; First Baptist Church v. Robberson, 71 Mo. 326; Sidwell v. Kaster, 289 Mo. 174; Linn County Bank v. Clifton, 263 Mo. 200; King v. Estate of Stotts, 254 Mo. 198; Peck v. Fillingham, 199 Mo. App. 277; Bowles v. Troll, 190 Mo. App. 108; Penn v. Penn, 39 Mo. App. 282. (4) The circuit court having jurisdiction of the matter of an election on behalf of an insane widow, may proceed in the same suit to remove an unfit guardian. 2 Woerner's Am. Law. of Administration, sec. 267, p. 870; 1 Pomeroy's Equity Jurisprudence (4 Ed.) sec. 235; McMurray v. McMurray, 258 Mo. 405; Potter v. Whitten, 161 Mo. App. 118. (5) If the statute authorizing the guardian of an insane widow to elect for her be so construed as to preclude all judicial inquiry into and jurisdiction over the matter of such an election, then such statute is unconstitutional. U. S. Constitution, 14th Amendment; Constitution of Mis-

souri, art. 2, sec. 30; art. 3; art. 6, sec. 1; Hunt v. Searcy, 167 Mo. 158; State ex rel. v. Atkinson, 271 Mo. 28; Shanklin v. Boyce, 275 Mo. 5.

BLAIR, J.—Suit in equity to remove the guardian of an insane widow and set aside an election made by said guardian on behalf of said widow to renounce the will of her deceased husband and to take a child's share of his estate, with a prayer that the court make such election for said insane widow as will be for her best interest. There was a decree for plaintiffs granting the relief prayed for. By an order of one of the judges of this court, under authority of Section 1474, Revised Statutes 1919, an appeal was granted said guardian, both in her personal and representative capacities.

No motion for new trial was filed at the trial term below and hence there is nothing before this court, except the record proper. The question for determination is whether or not the facts stated in the petition authorized the trial court to enter the judgment appealed from. We will state as briefly as possible the facts set forth in the petition. The answer of appellants practically admits all of the facts thus set forth.

Edward A. Primeau, who will be referred to as "testator," died in the city of St. Louis, October 21, 1922, leaving surviving him Louise A. Primeau, his widow, who will be referred to as such, and a son and a daughter by a former wife, to-wit, respondents Edward M. Primeau and May E. Mueller. No child was born to the union of the testator and his widow.

By his will, testator named his son, Edward M. Primeau, as executor, and, as such executor, said son took charge of the estate consisting entirely of personal property of the value of about $34,000, none of which was derived from his wife's separate property. Said Edward M. Primeau was so administering said estate when the petition in this case was filed. By the terms of said will, one-third of testator's estate was bequeathed to the son, Edward, absolutely, one-third to the daughter, May, absolutely, and one-third to the St. Louis Union Trust Company in trust for testator's widow for and during her natural life. It was provided that said trustee, out of the income of said trust fund (or out of the body of same, if necessary), should support and maintain said widow. Pending the administration and distribution of his estate, testator laid upon his executor the duty of providing for the care and support of his widow. Said bequest to the trust company in trust for testator's widow was made "in lieu of dower and all statutory provisions giving said widow an interest in said estate." At the death of testator's widow, whatever remained of said trust fund was, under said will, to go to testator's son and daughter (respondents here) share and share alike.

In 1912, which was about ten years before testator's death, Louise A. Primeau, the widow, became insane, and it was necessary to and

testator did confine her in St. Vincent's Institution for the Insane in St. Louis County, where she was still confined at the institution of this suit. The petition alleges "that the mental malady of said Louise A. Primeau is incurable, and that it will be necessary that she remain an inmate of such an institution during the remainder of her life. That said Louise A. Primeau is now about sixty years of age."

Mrs. Primeau had never been formerly adjudged to be insane. On May 19, 1923, appellant Gertrude Primeau, who is the widow of testator's brother and also the sister of his insane widow, instituted such proceedings in the Probate Court of the City of St. Louis that said Louise A. Primeau was formally adjudged insane and said Gertrude Primeau was by said probate court appointed guardian of the person and estate of said widow. The estate was represented as being of the value of about $11,000 and as consisting of the right of such insane widow to renounce the will of testator and to take a child's share of his estate. On or about July 14, 1923, said guardian "filed in said Probate Court and in the office of the Recorder of Deeds of the City of St. Louis, a purported renunciation by said widow of said will of said Edward A. Primeau, deceased, and a purported election by said widow to take a child's share in the estate of said Edward A. Primeau, deceased."

Said petition then proceeded to allege that such purported renunciation and election were not for the best interest or benefit of the widow, but were for the benefit and in the sole interest of said guardian and next of kin. That such guardian was not a proper person to remain guardian of the widow, because of such personal and private interest in controlling a third part of testator's estate in such a way as to keep it intact and to let it increase and accumulate rather than to use it for the benefit of the widow, to the end that the remainder thereof, after the death of the widow, might go to the next of kin of said widow.

Further allegations are made in the petition to the effect that the widow was hopelessly and incurably insane; that the provisions for her care and support made in testator's will are better for her than a child's part of his estate intrusted to the care of a guardian.

Said petition then alleges that Section 325, Laws 1921, pages 111 and 112, if construed in certain ways, would violate certain provisions of the Federal Constitution and the Constitution of the State of Missouri. We will not here notice such allegations, as they do not now concern us.

The prayer of the petition was as follows:

"Wherefore, plaintiffs pray that the said Gertrude Primeau, guardian as aforesaid, be removed as such guardian, and that the court make such election for said insane widow as will be to her best interests considering her condition and the provisions made for her by said testator, and considering also the right of testator to dis-

pose of his property by will and that the next of kin of said insane widow have no claim upon his bounty; and plaintiffs pray that the decree of this court be certified to the Probate Court of the City of St. Louis, State of Missouri. Plaintiffs further pray that the court will make such further orders and decrees in the premises as may be just and equitable.''

Thereafter, A. M. Brinkman, Esq., was by the trial court appointed guardian *ad litem* for the insane widow. The widow was not personally served with process, but service for her was had on appellant guardian. The St. Louis Union Trust Company filed its answer admitting the facts alleged in the petition and asking the court to make whatever orders and decrees it deemed to be just and equitable. The statutory guardian, Gertrude Primeau, at first filed a demurrer, and when same was overruled she filed her answer, in which she admitted that the widow was and is incurably insane and also practically admitted all of the facts set forth in the petition, except those allegations reflecting upon her own qualifications to serve as guardian and those tending to show that the provisions made for the widow in testator's will were better for said widow than a renunciation of the will and an election to take a child's share of testator's estate.

The answer of the guardian *ad litem* admits the allegations of the petition, alleges the unfitness of Gertrude Primeau to act as guardian and joins in the prayer of the petition.

The trial court found the issues in favor of the plaintiffs, in their personal capacities, and in favor of the son as executor. It also found in favor of the Trust Company and in favor of the widow, as represented by the guardian *ad litem*. It found against the guardian appointed by the probate court. It found that the renunciation of the will by statutory guardian and an election to take a child's share in testator's estate were not in the interest nor for the benefit of said widow, but were in the interest and for the benefit of the next of kin of said widow and that it was for the best interest and benefit of the widow to abide by the said will and to accept the provisions therein made for her by testator and to take thereunder.

The court found that appellant Gertrude Primeau had an interest as next of kin inconsistent with her duty as guardian of the widow. It was accordingly ordered that such renunciation of the will and election to take a child's share be set aside. Thereupon the court elected for the widow to take under testator's will. It was further ordered that Gertrude Primeau be removed as guardian of said widow.

I. Appellant seemingly does not challenge the propriety of the order made by the trial court, if said court had the jurisdiction and power, under the facts stated in the petition, to make such an order. It is quite apparent that, if the court had such power, the order made was fully justified by the opinion of this court in the case of In re Estate of Connor, 254 Mo. 65, which the trial court held to

317 Mo. Sup.—53.

be decisive of his right and duty to make the order which he made. On the authority of that case, we have no hesitancy in ruling that the facts set forth in the petition, if proven (and on the present state of the record it must be conclusively presumed they were so proven), amply justified the trial court in ruling that it was not for the benefit or best interest of the widow to renounce the will and to take a child's share of the estate, but, on the contrary, was for her benefit and best interest to accept the provisions of the will and to take under it, when full consideration is given to her mental condition, her needs, the provisions made for her by testator and the disposition he wished to make of his property and the absence of any just claim upon his estate by his widow's next of kin. The correctness of the order from that standpoint will be taken as fully established.

II. Appellants make eleven assignments of erorr, but they really constitute only one. Each and every one of them, in one form and another, challenges the power of the court to remove appellant as guardian and to make an order setting aside the re-
**Authority of Connor Case.** nunciation of the will and the election of the guardian to take a child's share and, in lieu thereof, to make an election for the widow to take under the will. Appellants contend that the Connor case is not an authority controlling upon this question, because, in that case, the guardian refused to elect at all and hence it was held that a court of equity could elect for the ward. While here the guardian did elect and a court of equity has no power to set aside such election.

III. It is first contended that the petition conferred no jurisdiction upon the circuit court, because it does not appear that the plaintiffs are the real parties in interest. The individual plaintiffs had a very real interest in this: that, if the renuncia-
**Parties in Interest.** tion of testator's will and election to take a child's share of his estate by his insane widow be not set aside, their interest as contingent remaindermen was completely swept away. If the widow took under the will, there might be something left in the trust fund to go to said plaintiffs after the death of the widow. The executor had certain rights and duties under the will and before distribution thereunder in respect to the trust fund, which were also affected by such renunciation and election, if allowed to stand. The plaintiffs were therefore real parties in interest.

IV. Section 325, Laws 1921, page 111, provides that: "Whenever the widow is entitled to an election under the provisions of this article such election shall be made by declaration, in writing, . . .
**Election by Guardian.** and in all cases when any widow entitled to the benefit of the election under this article shall be of unsound mind or a minor, the lawful guardian of such persons may elect for his said ward, in the same manner and with like effect

as said ward might do were she capable in law of so electing.'' Section 325, Revised Statutes 1919, was in substantially the same form, so far as the provisions above quoted are concerned. The same may be said of the corresponding sections in prior revisions of our statutes.

Appellants contend that this section confers sole power of election upon the guardian and, as the widow's guardian has elected to renounce the will and take a child's share of testator's estate, such election is final and conclusive, and is binding, not only on the probate court, but upon a court of equity as well.

Young v. Boardman, 97 Mo. 181, l. c. 192, is cited as settling the finality of the guardian's election against the will. There Judge BLACK said: ''But the power to make the election is conferred upon the guardian, and his election, *legally made as it is in this case,* is final.'' (Italics ours.) It cannot be truthfully said that an election in fraud of and against the best interest of an insane widow is a legal election. The petition alleged, and we must assume that the proof showed, that the insane widow could not possibly use or enjoy more of the testator's estate than is necessary for her care and physical comfort during the remainder of her life and that the personal and private interest of the guardian, as next of kin, would be to use as little as possible of the child's part of testator's estate in caring for said widow and to keep as much of said estate as possible intact and to let it accumulate as much as possible so that, at the death of said widow, just as much of an estate as possible would be left to be distributed to the next of kin of such widow.

It would be within the power of the guardian to remove the widow from the kindly ministrations of St. Vincent's Institution and to care for her much less expensively and probably less adequately elsewhere and thus augment the widow's estate, if the guardian were permitted to secure possession and control of such estate in behalf of the widow through the election made for her. These facts are alleged in substance in the petition and it must be assumed that proof establishing such allegations as facts was offered to the satisfaction of the chancellor below. With such facts established, it could not well be said that the election made by the guardian was to the advantage of the widow and constituted a legal election. Young v. Boardman, supra, therefore, constitutes no authority for the finality of an election of that character.

It is said that the Connor case approved Young v. Boardman as to the finality of the election made by the guardian, and that the Connor case constitutes authority for an election for an insane widow by a court of equity only when the legally appointed guardian has refused to make an election of any sort on behalf of his ward. In the Connor case, the legally appointed guardian and his successor, both appointed by the probate court, were opposed to an election in

behalf of the widow to renounce the will and, by failure to elect, in effect elected for her to take under the will. The lapse of a day or two at most in that case would have made such failure to elect an effective election to take under the will.

There is nothing in the opinion in the Connor case to indicate that this court would not have made the same election it did make for Mrs. Connor, had it appeared that her guardian had wrongfully and against her interest, and therefore fraudulently and illegally, elected otherwise. Judge GRAVES there said: "But suppose the guardian does not elect or renounce, as in this case. Or suppose it can be said that by refusing to do either he has elected for his ward to accept the terms of the will, is there no remedy? If, prompted by a wrong motive, as charged here, the guardian by even non-action could be said to have elected to stand by the will, then there should be some remedy in equity, there being no adequate remedy at law. In other words, a guardian cannot wrongfully act or wrongfully refuse to act without there being some remedy."

We are rather impressed by an illustration set forth in respondents' brief and the argument based upon it, as follows: "If appellants are right in their contention that no court may take cognizance of an election made by a guardian, an insane widow might be deprived of the bulk of a fund set aside for her by the will of her husband. Let us suppose that in this case the widow was much younger and had a long instead of a short expectancy of life, and that her husband had left his entire estate in trust for her support, the remainder after her death going to his children. The children, being dissatisfied, cause the widow to be adjudged insane and one of themselves to be appointed her guardian, who promptly elects for her to take a child's share outright. Appellants contend that no court could come to the widow's rescue. We contend that a court of equity could and would secure to her the provision made for her by her husband. It was to prevent the perpetration of frauds under legal forms that courts of conscience were instituted, and their jurisdiction has ever been commonly invoked in the interest of the insane, as it has been invoked here."

In connection with the foregoing illustration, the remark of Judge GRAVES that "a guardian cannot wrongfully act or wrongfully refuse to act without there being some remedy" is quite in point. We think the remedy resides in a court of equity where, upon proper allegation and sufficient proof, not only may an election for an insane widow be made where her guardian has wrongfully failed or refused to make one, but also where the question of the legality, good faith and beneficial character of an election actually made by such guardian, in behalf of his insane ward, may be scrutinized and, if deemed necessary and for the best interest of the insane widow, such election may be set aside. No other court has the power to protect the rights

of the helpless ward. The probate court cannot set the election aside, even if it could use such improper election as a basis for a finding that the guardian had been guilty of neglect of duty, misconduct or mismanagement, under Section 492, Revised Statutes 1919, and should remove such guardian. Such removal by the probate court could not affect an election duly and formally made in compliance with the statute.

In Young v. Boardman, supra, it was said: "The guardian did not, in this case, apply for or procure an order of the court directing him to make the election, and in this there is no irregularity. The power to make the election, either to not accept the provisions of the will or to take one-half of the estate subject to the payment of debts, is vested in the guardian without any such order. The statute does not contemplate that he will procure an order therefor before or after making the election. On the contrary, the power vested in him is that he may, for his ward, elect in the same manner and with like effect as she could had she been of sound mind."

The Connor case not only settles the power of a court of equity to make an election for an insane widow where her guardian refuses to do so, but just as conclusively and equally on principle sustains the power of a court of equity to inquire into the legality and good faith of an election actually made. Before probate courts were created, chancery courts had full power and jurisdiction in such cases. Probate courts were not given such powers at or since their creation. Such power, therefore, continues to reside in the chancery court. We again quote from the Connor case:

"Other authorities might be cited, but these suffice. It is safe therefore to say that at common law the insane were the wards of chancery. It is also safe to say that unless the courts exercising common-law jurisdiction in this State have been shorn of this power by statute they likewise possess such power. It is true that by the creation of probate courts the general control of the insane has been transferred from the court of equity to these courts, but it does not follow from this that all equitable cognizance over matters relating to lunatics and their interests was thus taken from the courts of equity. Probate courts are not courts of equity, and whilst they in the performance of the duties devolved upon them, often administer according to equitable principles, yet of matters purely equitable they have no jurisdiction."

Such conclusion was fully justified by the authorities cited and considered by Judge GRAVES in the Connor case. The allegations of the petition show that a grievous wrong was done to the insane widow by the self-serving and therefore fraudulent and illegal election of her guardian. On the state of the record before us, it must be conclusively presumed that the proof amply supported such allegations. The probate court had no power to set aside the election and

undo the wrong. The creation of probate courts has not taken away the equity powers of the circuit court which were not expressly conferred upon the probate court. Happily the arm of the chancellor has not been so shortened that it cannot reach the helpless insane widow and right the wrong which has been done to her. The trial court correctly ruled that it had the power to set aside the illegal and fraudulent election made by the interested guardian in the widow's behalf and to make an election deemed more beneficial to such widow.

V. Appellants contend that the trial court had no power to remove the guardian appointed by the probate court. It could hardly be said that the guardian, in making an election which brought to the widow an absolute estate in property in lieu of her right to the use of the same property during her life,
**Removal of Guardian.** was guilty of neglect, misconduct or mismanagement of the ward's estate. Such election could scarcely be regarded as conduct justifying the removal of the guardian by the probate court under either Section 432 or Section 492 of our statute. The probate court therefore was without power to remove appellant guardian for that reason. [State ex rel. v. Bird, 253 Mo. l. c. 581.]

The guardian therefore could not be removed for making such election, unless such removal could be made by a court of equity. Under the pleadings and assumed proof, the guardian clearly should have been removed. Her continued power as guardian to interfere with the arrangements made by testator for the custody and care of his insane widow constituted a continuing menace to the best interests of the widow. In the absence of the power of the probate court to remove the guardian, the power must be regarded as residing in a court of equity.

By the fourth subdivision of Section 2436, Revised Statutes 1919, the circuit court possesses "a general control over . . . guardians, curators, minors, idiots, lunatics and persons of unsound mind." We think that, under Article VI, Section 34, of the Constitution, the General Assembly had the power to reserve such general control to the circuit courts, as it undertook to do by said Section 2436. Said Article VI, Section 34, of the Constitution provides for the appointment of guardians by the probate court. It was left to the Legislature to provide for removals. The probate court has only been empowered to remove guardians for the reasons specified in Sections 432 and 492. The power of removal in other cases either remained in the chancery side of the circuit court, because not taken away from such court and given to the probate court, or was committed to the circuit court under subdivision fourth of said Section 2436.

In the Bird case (253 Mo. 569) it was made clear that the reason the circuit court was prohibited from removing the guardian was

because the probate court had no power to do so and the circuit court in the particular case derived its power from the probate court by reason of the appeal and under such circumstances the circuit court had only such power as the probate court had. Judge Brown said: "It is well settled that the nature of an action does not change through its transfer by appeal from one court to another, consequently the circuit court, *though a court possessing chancery powers, could not enter any judgment which the probate court was without power to render.*" (Italics ours.)

The guardian's conduct and interest, as alleged and presumably proven, were inimical to the best interest of the insane ward. If the probate court could not remove such guardian the circuit court, in the exercise of its chancery powers, could do so.

VI. Even if it be assumed that the probate court could remove the guardian under Section 432 or Section 492, yet the circuit court could do so under the facts of this case because it had acquired jurisdiction of the guardianship for the purpose of reviewing the legality and fairness of the guardian's election and, having rightfully acquired jurisdiction for that purpose, it had the power and the duty to retain such jurisdiction and to exercise it for all purposes. [Purdy v. Gault, 19 Mo. App. 191, l. c. 197; Penn v. Penn, 39 Mo. App. 282, l. c. 287; Bowles v. Troll, 190 Mo. App. 108; King v. Estate of Stotts, 254 Mo. 198, l. c. 212; Dobyns v. McGovern, 15 Mo. 662; Clark v. Henry's Admr. 9 Mo. 339.]

**Equitable Jurisdiction: Complete Justice.**

Appellant cites a number of cases which he contends deny the power of the circuit court to remove the guardian. Examination of these cases discloses that the circuit court had not acquired jurisdiction of the subject-matter upon some ground clearly coming within its equitable jurisdiction, and so could not exercise such jurisdiction for all purposes. For example, in Scott v. Royston, 223 Mo. 568, l. c. 585, the circuit court had ordered the sale of real estate to pay the debts of decedent and no jurisdiction for any other purpose was acquired or even asserted. The expression in the case of In re Ford, 157 Mo. App. 141, l. c. 148, that the probate court has sole original jurisdiction over the removal of curators was said in a case where a curator was removed by the probate court and the case later went to the circuit court upon appeal. The remark in Ex parte Zorn, 241 Mo. l. c. 271, concerning the removal of a guardian on the facts in that case sheds no light on the power of the circuit court in this case, and, if it has any such tendency, such remark was mere *obiter* in the case where it was made.

We are satisfied that the order made by the trial court in the case at bar removing the guardian was entirely proper in order to safe-

guard the best interests of the ward after the court had made an election for such ward different from that undertaken to be made by the guardian.

We have considered all of the assignments made in the appellants' brief and, finding no substantial merit in any of them, the judgment of the trial court is affirmed. *White, P. J.,* and *Walker, J.,* concur.