EDWIN F. TRACY and MARY K. TRACY, (Plaintiffs) Respondents, v. JOHN T. SLUGGETT III, Individually and as Alleged Trustee of ELIZABETH S. DELANY, JOHN T. SLUGGETT, MARIE SCHAEFER, MARGARET WATSON, ELIZABETH MARTIN, a Minor, and ELIZABETH SLOAN DELANY, (Defendants) Appellants, WALTER L. ROOS, Guardian of the Person and Estate of ELIZABETH SLOAN DELANY, (Intervener) Respondent, No. 41644—232 S. W. (2d) 926.

Division One, September 11, 1950.

Motions for Rehearing or to Transfer to Banc Overruled, October 9, 1950.

*John T. Sluggett* pro se and for appellants Elizabeth Sloan Delany, John T. Sluggett and John T. Sluggett III.

1122

*Richard D. Gunn* for appellant Elizabeth Martin, a minor.

*Stephen C. Rogers* for appellants Margaret Watson and Marie Schaefer.

*J. L. London* for respondents Edwin F. Tracy and Mary K. Tracy.

1126

*Walther, Hecker, Walther & Barnard* for respondent Walter L. Roos, Guardian of the Person and Estate of Elizabeth S. Delany.

VAN OSDOL, C.—Action in equity to cancel a trust in-
denture executed by Elizabeth Sloan Delany, to quiet title, and for
other relief. The action was instituted by Edwin F. Tracy, a fourth
cousin of Elizabeth Sloan Delany, and by his mother, Mary K. Tracy,
against John T. Sluggett III, personally and as trustee under the
indenture; and against Marie Schaefer, Margaret Watson, and Eliz-
abeth Martin, a minor, daughter of Marie Schaefer, beneficiaries. The
donor in the indenture, Elizabeth Sloan Delany, alleged to be of un-
sound mind, was also joined as a party defendant as was John T.
Sluggett, an attorney, who had supervised the preparation of the
trust instrument and who has appeared and filed answer for defendant
Elizabeth Sloan Delany. Walter L. Roos, who had theretofore been
appointed guardian of the person and curator of the estate of Eliza-
beth Sloan Delany, was granted leave to intervene. The trust in-
strument, which plaintiffs seek to cancel, conveyed and assigned to
the trustee realty and personalty of alleged value in excess of $300,-
000.

The case involves questions of the power of a court of equity to
act in matters involving a person and the property of a person of un-
sound mind.

Plaintiffs alleged in their petition that Elizabeth Sloan Delany was
of unsound mind and incapable of managing her affairs and had
been so adjudged by the Probate Court of the City of St. Louis; that

the Probate Court had appointed Walter L. Roos guardian, but an appeal had been taken to the Circuit Court, wherein, upon a trial *de novo,* a jury found Elizabeth Sloan Delany to be of unsound mind; that defendant John T. Sluggett, purporting to act for Elizabeth Sloan Delany, had indicated he would file a motion for a new trial and perfect an appeal from the ensuing judgment; that the trust instrument is void by reason of the mental incapacity of Elizabeth Sloan Delany, and by reason of the undue influence and duress exercised upon her by defendants Marie Schaefer and Margaret Watson; that the trust instrument constitutes a cloud on the title to real property belonging to Elizabeth Sloan Delany; that defendant John T. Sluggett, attorney, was only purporting to act for Elizabeth Sloan Delany in the insanity proceeding and was in reality acting for and on behalf of defendants Marie Schaefer, Margaret Watson and Elizabeth Martin; that defendants John T. Sluggett and John T. Sluggett III (father and son) have acted for the benefit of the trustee and defendants Marie Schaefer, Margaret Watson and Elizabeth Martin rather than for the benefit of Elizabeth Sloan Delany; that plaintiffs have reasonable cause to believe that defendants may sell and convey the property of Elizabeth Sloan Delany, and her estate may be dissipated and squandered; and that plaintiffs have instituted the action primarily for the benefit and protection of Elizabeth Sloan Delany and for the preservation of her property, and, secondarily, for themselves and others similarly situated, that is, "on behalf of other heirs who have an inheritable and contingent interest" in the property, particularly the real estate of Elizabeth Sloan Delany. Plaintiffs prayed for the cancellation of the trust indenture; for an order enjoining defendants from transferring the property or interfering with the person of Elizabeth Sloan Delany; for the appointment of a receiver or guardian *ad litem* to recover and protect the property, and for orders of accounting, and restoration of other property which defendants have heretofore acquired during the mental incompetency of Elizabeth Sloan Delany; and for a decree determining the title to the real property to be in Elizabeth Sloan Delany, free of all claims of other defendants; and for other and full and complete relief.

The intervener, Walter L. Roos, adopted certain paragraphs of plaintiffs' petition, and further alleged that Elizabeth Sloan Delany, because of her condition, should have the protection of a guardian of her person and property; that "a cloud has been cast upon the status" of the intervener; and that he has heretofore instituted actions to recover her personalty. The intervener prayed the court to hold the trust instrument void *ab initio,* and to declare him to be the duly appointed guardian and exclusively in charge of the person and property of Elizabeth Sloan Delany under the supervision of the Probate Court of the City of St. Louis; that the court make such

orders as are necessary for her protection and for the conservation of her property; and that he be directed to recover all of her properties, real and personal, and wherever situate.

Having heard the evidence, the trial court found it had jurisdiction because of and under and by virtue of Sections 1684 and 2100 R. S. 1939, Mo. R. S. A. §§ 1684, 2100, as well as by virtue of the inherent jurisdiction of a court of equity over persons of unsound mind; that May 16, 1947, Elizabeth Sloan Delany had been adjudged as of unsound mind by the Probate Court, and intervener Walter L. Roos appointed guardian; that Elizabeth Sloan Delany had been of unsound mind for at least three years prior to the adjudication of May 16th; that defendants have acted in consort with each other in depriving Elizabeth Sloan Delany of her property; that the trust instrument is not the instrument of Elizabeth Sloan Delany but of defendants Marie Schaefer and Margaret Watson; that the instrument is unconscionable and the result of the concerted efforts of defendants Marie Schaefer and Margaret Watson to obtain the control, use and benefit of the property of Elizabeth Sloan Delany; that intervener Walter L. Roos has all the powers and duties of a guardian, and a sufficient interest in the subject matter to permit his intervention in the cause; that a large part of the estate of Elizabeth Sloan Delany has been dissipated; and that ancillary orders theretofore entered by the Circuit Court were proper. The trial court ordered, in part, that none of the defendants other than Elizabeth Sloan Delany has any interest in her property; that the trust indenture be declared void; that conveyances (executed by Elizabeth Sloan Delany) of real property in the State of Michigan be declared void, and surrendered by John T. Sluggett III for cancellation, he to execute a reconveyance of the property to Elizabeth Sloan Delany; that defendants Marie Schaefer and Margaret Watson return all moneys and other property received by them during a three-year period prior to May 16, 1947, and to the time of the rendition of the judgment; that temporary restraining and eviction orders, theretofore entered, be made permanent; that in order to avoid a multiplicity of suits the court should assume jurisdiction of other actions pending in the Circuit Court of the City of St. Louis, with the view of according the parties complete relief; and that the court retain jurisdiction for such further action as the court might deem proper in order to collect and preserve the property of Elizabeth Sloan Delany.

Elizabeth Sloan Delany is the childless widow of John O'Fallon Delany who died in 1930. When the proceeding of inquiry into her sanity was instituted in 1947, she was 89 years old. Her property then consisted of the Delany residence (and valuable personalty therein) on Lindell Boulevard; a rental building at the southwest corner of the intersection of Tenth and Locust Streets in St. Louis, and parcels

of land and summer cottages thereon at Douglas, Michigan. Mrs. Delany's nearest relatives are cousins of the second degree. Margaret (Smith) Watson, defendant, was first employed by Mrs. Delany as a cook in 1917 or 1918, and has continued to serve in various capacities in the Delany home. When Margaret first came to the Delany home, she brought with her a small daughter, Marie Smith, child of a former marriage. Marie was then four years old. Mrs. Delany became fond of Marie, who was treated as a member of the Delany family; however, although urged to do so by Margaret and Marie, Mrs. Delany always refused to adopt Marie. Marie married one Martin in 1931; and Elizabeth Martin, defendant, namesake of Mrs. Delany, was born to the marriage. Later, the Martins were divorced. Three subsequent marriages of Marie were also dissolved by divorce. At and for some time prior to the trial of the instant case, Marie was married to August Schaefer.

An inquiry into the sanity of Mrs. Delany was instituted May 9, 1947, in the Probate Court of the City of St. Louis, by one Kathleen Franciscus. The Probate Court found Mrs. Delany was of unsound mind and incapable of managing her affairs, and appointed Walter L. Roos, intervener-respondent herein, guardian of her person and estate. John T. Sluggett, defendant, acting as attorney for Mrs. Delany, perfected an appeal to the Circuit Court of the City of St. Louis, wherein, in Division No. 4, December 1, 1947, Judge Robert L. Aronson presiding, the case was tried before a jury; but a mistrial was declared. The jury could not agree upon a verdict. January 8, 1948, Mrs. Delany purportedly executed the trust indenture, more particularly referred to infra. April 5, 1948, a second trial was had before a jury in Division No. 5 of the Circuit Court, Judge Francis E. Williams presiding. The jury returned a verdict, nine jurors concurring, finding Mrs. Delany was of unsound mind and incapable of managing her affairs. Upon appeal, the St. Louis Court of Appeals reversed the ensuing judgment and remanded the cause. See In re Delany, Mo. App., 226 S. W. 2d 366.

 Initially, it is contended by defendants-appellants that plaintiffs have no interest in the subject matter, and may not maintain the action. It has been held that one who has no interest in land may not maintain an action under the provisions of Section 1684, supra, to ascertain and determine title. Shelton v. Horrell, 232 Mo. 358, 137 S. W. 264. It has also been said that heirs apparent or expectant heirs of a living person have no fixed or vested interest in the property of such person. State ex rel. McClintock v. Guinotte, 275 Mo. 298, 204 S. W. 806; Wass v. Hammontree, Mo. Sup., 77 S. W. 2d 1006. However, in this *extraordinary* case we have the most *extraordinary* charges stated in the pleadings, which charges, if true, call for the action of a court of equity. At common law the conscience of a court of chancery could be invoked in the interest of the insane. Now, if the

allegations of the petition are true, Mrs. Delany is the party primarily interested, and the public at large—the sovereign people of the State of Missouri—have an interest in Mrs. Delany and in her affairs. In re Estate of Connor, 254 Mo. 65, 162 S. W. 252; State ex rel. Paxton v. Guinotte, 257 Mo. 1, 165 S. W. 718; Ex parte Higgins v. Hoctor, 332 Mo. 1022, 62 S. W. 2d 410. It would seem that plaintiffs' institution of the action and the trial court's assumption of jurisdiction in Mrs. Delany's behalf was tantamount to the commencement of an action by next friend. We are not here concerned with a mercenary motive which may have prompted plaintiffs to institute the action, but we are greatly interested in Mrs. Delany's welfare and the preservation of her estate. In re Estate of Connor, supra.

Probate courts have no purely equitable jurisdiction. State ex rel. Baker v. Bird, 253 Mo. 569, 162 S. W. 119; In re Estate of Connor, supra. The instant case seems to be one which peculiarly appeals to a court of equity. It is safe "to say that at common law the insane were the wards of chancery. It is also safe to say that unless the courts exercising common law jurisdiction in this State have been shorn of this power by statute they likewise possess such power. It is true that by the creation of probate courts the general control of the insane has been transferred from the court of equity to these courts, but it does not follow from this that all equitable cognizance over matters relating to lunatics and their interests was thus taken from the courts of equity. Probate courts are not courts of equity, and whilst they in the performance of the duties devolved upon them, often administer according to equitable principles, yet of matters purely equitable they have no jurisdiction." In re Estate of Connor, supra; Primeau v. Primeau, 317 Mo. 828, 297 S. W. 382. Could it be truly said that, when the probate court by reason of its limited powers cannot adequately act, a person of unsound mind and his consequently insecure estate cannot be made secure and fully protected by the powers of a circuit court?

The lunacy proceeding instituted in the Probate Court was regular. In re Delany, supra. The appeals successively perfected to the Circuit Court and to the St. Louis Court of Appeals suspended the jurisdiction of the Probate Court (44 C. J. S., Insane Persons, § 33, at page 95), although we are not prepared to say the appointed guardian was wholly without power to invoke the action of a court in the protection of the ward and her estate pending the appeal. And it would seem to us the guardian was entitled to intervene in the instant action and ask for a circuit court's declaration of his status during the pendency of the appeal. Section 1129 R. S. 1939, Mo. R. S. A. § 1129. In our opinion, the pendency of the insanity proceeding does not deprive the Circuit Court of jurisdiction of the instant action brought for the purpose of invoking equitable powers in the interest of the alleged incompetent. The Probate Court, of limited and with

no purely equitable powers and, in the circumstances of the appeal from the judgment in the insanity proceeding, with suspended powers, does not have exclusive jurisdiction. In the situation, the Circuit Court, whose adequate and inherent powers may be invoked in the interest of one who is insane, is of service to the ends of protecting the person and property of Mrs. Delany, and of doing full and complete justice. Primeau v. Primeau, supra; In re Estate of Connor, supra; and see generally Lommason v. Washington Trust Co., 140 N. J. Eq. 207, 53 A. 2d 175; Creech v. McVaugh, 140 N. J. Eq. 272, 54 A. 2d 443; Jordan v. McGrew, 400 Ill. 275, 79 N. E. 2d 622; Lykes Bros. Florida Co. v. King, 125 Fla. 101, 169 So. 595; Sewell v. Benson, 198 Ark. 339, 128 S. W. 2d 683; Horn v. Sankary, Tex. Civ. App., 161 S. W. 2d 156; Hax v. O'Donnell, 234 Mo. App. 636, 117 S. W. 2d 667.

It is not by reason of the sole allegation of Mrs. Delany's incompetency, as such, that the Circuit Court could assume jurisdiction. The original jurisdiction of a lunacy proceeding is in a probate court. Mrs. Delany has not been formally (and finally) adjudged of unsound mind by probate court proceeding. In re Delany, supra. Appellants have reminded us that Melissa Connor and Louise A. Primeau had been formally adjudged insane by respective probate courts in the cases of In re Estate of Connor, supra; and Primeau v. Primeau, supra. Appellants urge the fact that Mrs. Delany's incompetency has not been "thus fixed" differentiates the instant case from the Connor and Primeau cases, in which cases, appellants say, the adjudications of insanity were the bases for the assumption of jurisdiction by courts of equity. But a court of equity may in appropriate cases pursuant to its inherent general powers protect the property of persons of unsound mind who have not been judicially "found" *non compos mentis*. Vol. IV, Pomeroy's Equity Jurisprudence, 5th Ed., § 1314, p. 887; Jones v. Lloyd, 18 L. R. Eq. (Eng.) 265; Beall v. Smith, 9 L. R. Ch. (Eng.) 85; Light v. Light, 53 Eng. Rep. 631. Such appropriate cases are those calling for the exercise of the general jurisdiction of equity "not by reason of the incompetency, but notwithstanding the incompetency." Vol. IV, Pomeroy's Equity Jurisprudence, supra, p. 888. Independently "of authority, let us look at the reason of the thing. If this were not the law, anybody might at his will and pleasure commit waste on a lunatic's property or do damage or serious injury and annoyance to him or his property, without there being any remedy whatever. In the first place, the Lords Justices or the Lord Chancellor are not always sitting for applications in lunacy. In the next place, if they were, everybody knows it takes a considerable time to make a man a lunatic by inquisition . . . ." Jessel, M. R., in Jones v. Lloyd, supra.

We consider it pertinent to set out the substance of the trust indenture.

By the trust indenture, dated January 8, 1948, Elizabeth Sloan Delany, designated as the "Grantor" in the instrument, irrevocably assigns, transfers and conveys her real estate and personalty, as listed in an attached "Exhibit A," unto defendant John T. Sluggett III in trust, the trustee to have full power and authority to manage and control the trust estate and to sell, exchange, lease or otherwise dispose of all or any part of the estate upon such terms as he may see fit, and to invest and reinvest all or part of the estate in such securities or other property as he may in his absolute discretion select. The trustee may invest any part of the trust funds in property situate outside the State of Missouri.

The trustee is authorized to pay defendant John T. Sluggett a reasonable fee for services rendered or to be rendered to the grantor in connection with the proceeding theretofore instituted in the Probate Court, the trustee to have the sole right to fix and determine the amount of the fee. The trustee is authorized to pay the claim of one Clark for services rendered in painting the exterior of the Delany residence, an action on the claim being then pending in the Circuit Court. The trustee is further authorized to pay the grantor's funeral expenses out of the corpus of the trust estate in such amount as in his sole judgment shall be fair and reasonable.

The trustee is authorized to pay necessary expenses incurred by him in the management of the trust estate, including compensation to the trustee, necessary attorney fees, employees' wages, and taxes; maintenance, improvements and repairs on the Delany residence; and is to pay the remaining net income in equal monthly installments to the grantor. If such net income proves insufficient to pay the grantor $500 per month, the trustee is authorized to encroach upon the principal or corpus of the trust estate in order to pay any deficiency necessary to provide the grantor with at least $500 per month so long as she shall live.

Upon the death of the grantor her interest in the trust shall cease and terminate, the trustee to thereafter hold the trust estate in trust for defendant Marie Schaefer and her mother, defendant Margaret Watson, each to receive one half of the net income of the trust estate so long as each shall live; but if the net income shall not amount to $1000 per month so that each may receive $500 per month, the deficiency may be made up out of the principal of the estate. Upon the death of either, the interest of such decedent shall cease and the survivor shall be entitled to receive the entire net income; but should such income be less than $500 per month, the deficiency may be made up out of the principal of the trust estate. The trustee is further authorized to encroach upon the principal in the event of any emergency, the trustee to advance such sum out of the principal for

the benefit of the beneficiaries as he may deem proper in the circumstances of the emergency.

After the death of Marie and Margaret, the trustee shall hold the trust estate for the benefit of Elizabeth Martin, the trustee to use so much of the net income as he may deem necessary for her education, maintenance and support until she attains the age of twenty-one years, at which time the trustee is to pay over to Elizabeth one third of the trust estate. The instrument further provides the trustee shall pay over one half the trust estate to Elizabeth when she attains the age of twenty-six years, and the rest of the trust estate shall be paid over by said trustee to Elizabeth when she attains the age of thirty-one years. Upon the death of Elizabeth the trust shall terminate, if not terminated prior to that time, and the trust estate is to become a part of her estate. Provision is made in the event Elizabeth died before both Marie and Margaret. In that event, upon the death of the survivor (Marie or Margaret), the trust estate is to become a part of the estate of ▮▮▮▮ the survivor to be distributed according to the survivor's last will, or to her next of kin.

Neither the principal nor the income shall be subject to the debts of Marie, Margaret or Elizabeth, nor shall the same be subject to seizure by their creditors, nor shall Marie, Margaret or Elizabeth have the power to sell, encumber, anticipate or dispose of the principal or income thereon.

In the event of the death of the trustee prior to the termination of the trust, his father, defendant John T. Sluggett, shall become successor trustee with powers commensurate with those given the son as trustee. In the event of the death of such successor trustee, a trustee successor is to be designated by the Circuit Court.

If the grantor should be adjudicated of unsound mind, then and in such event the right of the grantor to receive the income from the trust estate shall cease and terminate, and the trustee shall have the sole right to determine the manner and amounts in which the income or principal shall be disbursed and paid for the support, maintenance and benefit of the grantor; and neither the trust estate nor any income therefrom shall be or become a part "of such guardianship estate," except, however, that the said trustee may pay to a guardian appointed by such Court such amounts as the trustee in his sole discretion may deem proper for the safety and protection of the grantor.

February 6, 1948, Mrs. Delany conveyed her land in Michigan to defendant John T. Sluggett III, and as of the same date defendant John T. Sluggett III conveyed the Michigan property to John T. Sluggett III, trustee.

John T. Sluggett III, twenty-three years old, a high school graduate, had three years "pre-legal" in Washington University and two years in law schools, and has continued his study of law under his

father's supervision since July 15, 1947. He had worked in a clerical capacity some nine months. He has had no experience in handling securities or real estate. While pursuing his studies of the law under his father's direction, the son has assisted in the work of the father's office. Before the trust indenture was executed John T. Sluggett III had taken an inventory of the personalty contained in the Delany residence; and prior to the entry of temporary restraining orders, was planning to sell the Michigan property.

In April, 1948, after the second trial *de novo* upon appeal from the judgment in the insanity proceeding, Walter L. Roos, intervener, had called at the Delany home, but was refused admittance. June 14, 1948, and November 12, 1948, ancillary to the instant action, the Circuit Court issued temporary orders restraining defendants, other than Mrs. Delany, from selling or otherwise disposing of Mrs. Delany's property, and from interfering with Walter L. Roos in the performance of his duties as guardian. June 17, 1948, the Circuit Court ordered Walter L. Roos, as guardian, to care for and protect the person of Mrs. Delany, and to take charge of and manage her properties under the supervision of the Circuit Court. July 9, 1948, the Circuit Court issued its order evicting defendants Marie Schaefer, Gus and Elizabeth Martin from the Delany residence.

Did Mrs. Delany have sufficient mental capacity at the times she signed the trust indenture and the conveyances of the Michigan property, and at the times she gave over moneys (represented by various checks, more particularly mentioned infra) to understand the nature of the particular transactions; and did she, with such understanding, voluntarily enter into and consummate the same? McCoy v. McCoy, 360 Mo. 199, 227 S. W. 2d 698; Edinger v. Kratzer, Mo. Sup., 175 S. W. 2d 807; Lastofka v. Lastofka, 339 Mo. 770, 99 S. W. 2d 46. The burden of proof on the issues is upon plaintiffs. And the burden must be sustained by clear, cogent and convincing evidence.

Acts of Mrs. Delany with reference to her property, and the testimony of witnesses, which testimony the trial chancellor obviously must have believed, clearly show Mrs. Delany is of unsound mind.

December 17, 1942, Mrs. Delany executed a deed of trust on her rental property at the intersection of Tenth and Locust Streets in St. Louis to secure the payment of $12,000. The instrument was released September 16, 1943. September 3, 1943, Mrs. Delany had executed a deed of trust on the rental property to secure the payment of $25,000. The instrument was released October 25, 1945. The two above mentioned encumbrances were procured through Cornet & Zeibig, which firm, having been the agent of Mrs. Delany for several years, did not desire to thereafter act for Mrs. Delany in any further increase of the loan; a representative of the firm was of the opinion Mrs. Delany, in 1945, was not competent mentally to transact busi-

1136

ness. In 1937, the firm had negotiated a sale of Mrs. Delany's piece of property "over on Seventh and Cass." In the years 1942 to 1945, she was unable to recall the transaction. Mrs. Delany's account was closed in late 1945, the firm issuing its check for a balance of $2,160.99 due Mrs. Delany. The check bears the endorsement of Mrs. Delany and Marie S. Spencer (now Marie Schaefer).

October 10, 1945, Mrs. Delany executed a deed of trust on the rental property to secure the payment of $45,000. The instrument was released March 5, 1947. February 18, 1947, Mrs. Delany had executed a deed of trust on the rental property to secure the payment of $70,000. There was evidence tending to show the loan was procured at the original solicitation of August Schaefer, husband of Marie. The net proceeds of this loan amounting to $21,993.85 were paid to Mrs. Delany by check of Hiemenz Realty Company drawn on the United Bank and Trust Company of St. Louis. The check was purportedly endorsed by Mrs. Delany, Margaret Watson and Marie S. Schaefer, the signatures being warranted by Hiemenz Realty Company. A teller of the United Bank and Trust Company testified that defendants Margaret Watson and Marie Schaefer received the entire proceeds of the check in currency. At the trial before Judge Aronson in December 1947, Mrs. Delany had said she had received nothing on the check. She did not recall the circumstances of the loan transaction. She said, "I suppose I haven't been very well and I haven't attended to those affairs." She testified she had made no gift to Margaret or Marie during the year:

Honorable Glendy B. Arnold, Judge of the Probate Court of the City of St. Louis, testified it was principally upon the testimony of Margaret Watson, defendant herein, that he has found Mrs. Delany to be of unsound mind. Margaret had testified before Judge Arnold that Mrs. Delany was to a very considerable extent under the domination of Marie; that Marie had the habit of drinking to excess and had assaulted Mrs. Delany; that "when the old lady wouldn't do what she (Marie) wanted her to do she made an attack on her and she had over a long period signed checks that Marie would present to her for various sums." (September 15, 1945, Cornet & Zeibig had issued a $600 check payable to Mrs. Delany. The check bears the endorsements of Mrs. Delany and "A. J. Schaefer." November 26, 1946, Hiemenz Realty Company had issued a $1500 check payable to Mrs. Delany. Marie Schaefer used the check to buy a ring costing $1350, and received the remainder of the proceeds of the check in cash. Mrs. Delany's bank balance for the month of November 1946 was $173.) Margaret had further testified Marie had secured a loan "of some twenty thousand dollars . . . the proceeds of that loan were divided between Marie and Margaret"; Mrs. Delany "was out of funds" at the time.

Margaret, testifying before Judge Arnold, further said Mrs. Delany's memory was very bad, defective; and Margaret expressed the opinion that, from her long observation of Mrs. Delany, she was of unsound mind. Subsequently, Judge Arnold visited the Delany home where Margaret, in the presence of Mrs. Delany, detailed the stormy history of the household—told of the "scenes that had transpired in the home, the troubles with Marie." In this connection we shall state generally the conditions obtaining in the Delany household throughout the years, as disclosed by the testimony of numerous witnesses among whom were the former employees at the Delany residence.

Mrs. Delany in former years was generous to her relatives, several of whom visited and lived in her home. In the summer she took her relatives and friends, and Margaret and Marie for vacation periods in Michigan. Mrs. Delany defrayed all of the expenses. As time went on Marie developed antagonism toward Mrs. Delany's relatives and friends. Ernestine Kimbrew Byrd, a cook at the Delany home from 1929 to 1944, testified she had heard Mrs. Delany ask Marie out of the house. Mrs. Delany feared both Margaret and Marie and didn't want to be left alone with them. Mrs. Delany locked herself in her room a number of times. Margaret and Marie would tell Mrs. Delany that her people did not care for her. "Marie would come in there and fight and try to run Mrs. Delany's relatives out." Marie, not infrequently, assaulted Mrs. Delany. The troubles in the Delany home were also recounted by Dalton Cooley, who served as a chauffeur and general house employee from 1930 to 1944. When he left Mrs. Delany's service in 1944, her mind "wasn't as good as it used to be." The witness also testified of Mrs. Delany's forgetfulness including her failure to recall the sale of her property "over on Seventh and Cass." In the last seven years he worked there, he heard Margaret and Marie plotting how they would get money out of Mrs. Delany. He saw Marie strike Mrs. Delany, "upon more than one occasion." No defendant, or witness for defendants, took the witness stand to refute the testimony of these witnesses relating to conditions in the Delany home and the relations of defendants Margaret and Marie with Mrs. Delany.

There was evidence introduced—testimony of physicians who had treated Mrs. Delany—that she suffered senile dementia, a progressive disease. According to a physician, who had treated her in October and November 1948, Mrs. Delany manifested "definite evidences" of the disease. In his opinion she was not responsible for any of her acts; and had not been lucid at any time within the last five years. Another physician, who has treated her since the latter part of October 1948, testified she suffers cerebral arteriosclerosis of long duration. She has typical delusions and hallucinations. Physicians, witnesses for plaintiffs and defendants, specialists who had inter-

viewed her for the purpose of testifying, were not in harmony in their views relating to the question of the mental condition of Mrs. Delany. Likewise, numerous lay witnesses were of contrary opinions on the question. Mrs. Delany had at times quite accurate recollection of events of years ago; however, her memory of the circumstances and her comprehension of the effect of more recent occurrences and transactions, it seems, were almost wholly obscured. For example, she seems to have no recollection of the increases of the encumbrances on her rental property. Nor does she recollect the disposition of the net proceeds of the $70,000 loan.

We regard the facts of her lack of knowledge or recollection of the increases of her loans and of the disposition of the net proceeds (nearly $22,000) of the $70,000 loan, which loan was made at a time when she was (the evidence shows) in great need of cash, as evidence of great weight in tending to show her progressive dementia had so affected her that she had no real comprehension of or will to determine what she did, and was devoid of all responsibility for her acts.

Honorable Robert L. Aronson, who presided as judge at the first trial of the appeal of the insanity proceeding, testified relating to his own opinion of the condition of Mrs. Delany's mind. He had interrogated her and observed her on the witness stand in the trial before him. He told of many of the passages of her testimony as bases for his opinion of her unsoundness of mind. Likewise, Honorable Glendy B. Arnold, judge of probate, as we have said, recounted the testimony of Margaret Watson, defendant, who was a witness in the insanity proceeding. In such proceeding, as stated, Margaret testified Mrs. Delany was of unsound mind. Margaret did not testify in the trial of the instant action; in fact, defendant John T. Sluggett is the only defendant who testified. He first met Mrs. Delany in "early" June 1947, at the instance of August Schaefer and wife Marie. August "had been a client of mine ▇▇ some years before." (Defendant John T. Sluggett, as attorney for Mrs. Delany, took an appeal June 3, 1947, from the Probate Court's judgment rendered in the insanity proceeding.) Although, as stated, John T. Sluggett first met Mrs. Delany in early June 1947, Mrs. Delany testified at the trial before Judge Aronson in December 1947 that Mr. Sluggett had "conducted my business for me" for several years.

Defendants-appellants greatly rely upon the recent case of McCoy v. McCoy, supra, 227 S. W. 2d 698. In the McCoy case the trial chancellor had found for defendants on the issues. This court, in the McCoy case, fulfilled its duty in weighing the evidence and determining its value with the view of reaching a correct conclusion; however, the rule of deference to the findings of the trial chancellor was not ignored. Defendants-appellants further stress the cases of Edinger v. Kratzer, supra, 175 S. W. 2d 807, and Hamilton v. Steinin-

ger, 350 Mo. 698, 168 S. W. 2d 59, in which cases the trial chancellors had found for plaintiffs on the issues of mental capacity and undue influence, and this court reversed the judgments. The rule of deference to a trial chancellor's findings is limited to the conditions of the testimony in each particular case. McCoy v. McCoy, supra; Daudt v. Steiert, Mo. Sup., 205 S. W. 222. In the Edinger case this court, having a regard for the rule of deference, went to great pains in examining the evidence, its competency, weight and value, and concluded the weight of the competent credible evidence was strongly against the chancellor's findings. In the Hamilton case, upon careful analysis of the evidence and giving due regard to the rule of deference, this court held the evidence was insufficient in quantity and quality to sustain the trial chancellor's findings.

Defendants-appellants complain of "relevant, competent and material evidence" excluded, and of error in admitting evidence of circumstances which were so remote as to have no probative value upon the issues. In attempting to fulfill our duty to carefully examine the whole record in an endeavor to reach correct conclusions, we have considered such rejected evidence as we have deemed admissible, and have ignored evidence we have deemed inadmissible. Edinger v. Kratzer, supra, 175 S. W. 2d 807, at page 811.

Defendants-appellants assert error of the trial court in overruling an application for a continuance. It seems the trial court, "about two months" before, upon the tacit agreement of the parties, had set the trial of the cause for March 14, 1949, and, as of date March 10th, an application for a continuance was filed on the ground the trial court had failed to provide the defendant Mrs. Delany with money in compliance with her former motion for funds asserted to be necessary in the preparation of her defense. Her counsel stated money was necessary so that a psychiatrist could examine her. The record shows that defendants were not deprived of the services and testimony of specialists, and the record shows that defendants were not otherwise circumscribed in fully developing their defense to the action. We rule the trial court did not abuse its discretion in refusing to grant the continuance.

In view of the condition of Mrs. Delany's mind, we deem it unnecessary to marshall the evidence bearing upon or decide the issues of undue influence and duress. We approve of the action of the trial court in designating and authorizing Walter L. Roos to act as receiver. in effect; and we approve of the trial court's supervision of his acts in ministering to Mrs. Delany's comfort and welfare, and in integrating, protecting and managing her estate. And we see no error in the trial chancellor's action in ordering the consolidation of stated pending actions involving the subject matter, with the view of correctly determining the issues of such actions. A court of equity has the inherent discretionary power to order the consolidation of actions

1140

where the subject matter and relief sought make it expedient for the court to thus determine all the issues and adequately adjudicate the rights of all of the different parties in one litigation. Manchester Iron Works v. E. L. Wagner Const. Co., 341 Mo. 389, 107 S. W. 2d 89; Vol. 1, C. J. S., Actions, § 110b, pp. 1355-1356.

Elizabeth Sloan Delany, a gentlewoman of sensitive, refined, generous spirit and disposition—intensely religious—showered her affection and her bounty upon those about her. In earlier years, the partial frustration of her childless life was in some measure assuaged by the presence of Marie in the Delany home. Even in later years Mrs. Delany sometimes referred to Marie in endearing terms. It must have been a great stress upon Mrs. Delany's tender sensibilities when she realized Marie was not disposed to fulfill the hopes of one who always extended the proffers of a love almost maternal. Marie, and often Margaret, presumed upon Mrs. Delany's affection and generosity; and by their acts struck discordant notes within and without the Delany household. And so Mrs. Delany's fond hopes were blighted, her will and courage broken, and her advancing years took their toll in much greater measure than usual. She became obsessed with many fears, some not entirely groundless, including the fear experienced by many exquisitely sensitive people—the fear of unsavory publicity. And now she is helpless—her body is lame and diseased, and her mind almost wholly taken over (since early 1944, the trial chancellor has justifiably found) by her progressive dementia senile. Completing our study of the whole transcript of the evidence, we should have been exceedingly surprised had we discovered that Mrs. Delany's plight of person and estate had not appealed to the conscience of a chancellor.

The judgment should be affirmed.

It is so ordered. *Lozier* and *Aschemeyer, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur, except *Hollingsworth, J.*, not voting because not a member of the court when the cause was submitted.